# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE REMEC INCORPORATED SECURITIES LITIGATION,<br><br>THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS. | CASE NO. 04-CV-01948 JM(AJB)<br><br>**ORDER DENYING MOTION TO DISMISS FOURTH AMENDED COMPLAINT** |

Defendants Remec, Inc., Ronald E. Ragland, and Winston E. Hickman move to dismiss Plaintiff's fourth amended federal securities complaint ("FAC"). Plaintiff opposes the motion. Pursuant to Local Rule 7.1(d)(1), this matter is appropriate for decision without oral argument. For the reasons set forth below, the motion to dismiss the FAC is denied.

## BACKGROUND

Lead Plaintiff, the Cuvelier Group, alleges that Defendants Remec, Inc. ("Remec"), its CEO Ronald E. Ragland ("Ragland"), and its CFO Winston E. Hickman ("Hickman") violated the federal securities laws by issuing a series of knowingly false statements concerning Remec's financial condition during the Class Period of September 8, 2003 through September 8, 2004.

The court incorporates the orders and statement of facts set forth in this court's orders of August 17, 2005 and February 14, 2006 granting the motions to dismiss the first and second amended complaints, respectively. While the FAC sets forth 76 more

1 pages of allegations than the second amended complaint, the general nature of the
2 alleged securities fraud remains consistent throughout the five complaints filed in this
3 action.

4 The FAC, particularly at ¶¶ 99-206, provides substantial detailed allegations,
5 based upon the review of over 50,000 pages of internal Remec documents, (Oppo. at
6 p.1:2-3), and interviews of at least 36 current or former Remec employees or
7 individuals associated with Remec. (FAC ¶30). These allegations identify specific
8 transactions and detailed internal information concerning Remec's financial condition,
9 including product sales, acquisitions, profit margins, and sales forecasts.

10 As with the earlier complaints, the gravamen of Plaintiff's complaint is that
11 Defendants failed to timely write down impaired goodwill. The FAC also sets forth
12 other allegations of misconduct including that Defendants failed to timely write down
13 inventory, to properly account for the sale of "zero-value inventory," and to maintain
14 adequate internal controls.

## DISCUSSION

**Legal Standards**

    1. Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) dismissal is proper only in "extraordinary" cases. United States v. Redwood City, 640 F.2d 963, 966 (9th Cir. 1981). Courts should grant 12(b)(6) relief only where a plaintiff's complaint lacks a "cognizable legal theory" or sufficient facts to support a cognizable legal theory. See Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1990). Courts should not dismiss a complaint "unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle [the party] to relief." Moore v. City of Costa Mesa, 886 F.2d 260, 262 (9th Cir. 1989) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)), cert. denied, 496 U.S. 906 (1990). Courts must construe the complaint in the light most favorable to the plaintiff. See Concha v. London, 62 F.3d 1493, 1500 (9th Cir. 1995), cert. dismissed, 116 S. Ct. 1710 (1996); In re Daou Sys.,

397 F.3d 704, 709-10 (9th Cir. 2005). However, conclusory allegations of law and unwarranted inferences are insufficient to defeat a Rule 12(b)(6) motion. See In Re Syntex Corp. Sec. Litig., 95 F.3d 922, 926 (9th Cir. 1996).

Rule 12(b)(6) "authorizes a court to dismiss a claim on the basis of a dispositive issue of law." Neitzke v. Williams, 490 U.S. 319, 326 (1989); Parks School of Business, Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995)("a complaint should not be dismissed unless a plaintiff could prove no set of facts in support of his claim that would entitle him to relief").

2. The PSLRA

In an effort to curtail the filing of perceived abusive lawsuits, Congress enacted the PSLRA to establish a uniform pleading standard:

> **(b) Requirements for securities fraud actions**
>
> **(1) Misleading statements and omissions**
>
> In any private action arising under this chapter in which the plaintiff alleges that the defendant--
>
> (A) made an untrue statement of a material fact; or
>
> (B) omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances in which they were made, not misleading;
>
> the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.
>
> **(2) Required state of mind**
>
> In any private action arising under this chapter in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.

15 U.S.C. §78u-4(b).

///

Under the heightened pleading standards of the PSLRA, see In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 974 (9th Cir. 1999), Plaintiff must (1) specify each statement alleged to have been misleading and the reasons why the statement is misleading; (2) state with particularity facts giving rise to a strong inference that the defendant acted with the requisite state of mind; and (3) with respect to allegations made on information and belief, state with particularity facts on which the belief is formed.  See Gompper v. VISX, Inc., 298 F.3d 893, 895 (9th Cir. 2002).  Scienter is the "mental state embracing intent to deceive, manipulate or defraud." Wharf Holdings Ltd. v. United Int'l Holdings, Inc. 522 U.S. 588, 593 (2001).  Under the PSLRA, "the court must consider all reasonable inferences to be drawn from the allegations, including inferences unfavorable to the plaintiffs. District courts should consider all the allegations in their entirety, together with any reasonable inferences that can be drawn therefrom, in concluding whether, on balance, the plaintiffs' complaint gives rise to the requisite inference of scienter." Gompper, 298 F.3d at 897.  The inquiry into scienter and falsity are generally inferred from the same set of facts, "and the two requirements may be combined into a unitary inquiry under the PSLRA." Daou, 397 F.3d at 711.

Finally, PSLRA's heightened pleading standards require Plaintiff "to plead, in great detail, facts that constitute strong circumstantial evidence of deliberately reckless or conscious misconduct." Silicon Graphics, 183 F.3d at 974.  "[T]o show a strong inference of deliberate recklessness, plaintiffs must state facts that come closer to demonstrating intent, as opposed to mere motive and opportunity [to commit fraud]." Id.

3.  Rule 10b-5

To state a claim under §10b of the Exchange Act, Plaintiff must allege that defendant (1) made a misrepresentation or omission; (2) of material fact; (3) in connection with the purchase or sale of a security; (4) with scienter; (5) that the plaintiff relied upon; and (6) causing Plaintiff to suffer damages.  15 U.S.C. §78j(b); Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 346 (2005).  Rule 10b-5 claims must

comply with Rule 9(b) of the Federal Rules of Civil Procedure.  <u>See</u> <u>In re Daou</u>, 397 F.3d at 710.

**The Claims**

As with the previous complaints, Plaintiff has the burden of alleging each of the elements of a Rule 10-b5 claim.  The court has little difficulty concluding that Plaintiff has – viewing the allegations in the best light for Plaintiff – adequately alleged falsity of the identified representations.  The difficulty with the previous complaints was Plaintiff's failure to adequately allege scienter.  The court first reviews the complaint's allegations to determine whether Plaintiff has adequately alleged scienter.

1.  <u>Scienter</u>

Plaintiff seeks to establish scienter with respect to the goodwill impairment analysis performed on December 26, 2003 by alleging that defendants used unrealistic and overinflated sales growth projections to artificially maintain the goodwill value throughout the Class Period.  The failure to "timely write down impaired good will . . . at the latest by August 2003, or a full year before it was taken," (FAC ¶4) Plaintiff concludes, establishes that Defendants deliberately or recklessly ignored the indicators of impairment. Plaintiff explains that Defendants recklessly assumed a 30-38% gross profit margin assumption when calculating the December 26, 2003 goodwill impairment analysis because, at the time of performing the analysis, Defendants anticipated that Remec "would be unprofitable in 1Q 05 and 2Q 05, would break even in 3Q 05, and would finally be profitable in 4Q 05 by lowering its costs."  (FAC ¶134). When the 30-38% gross profit margins were assumed, Remec's actual gross profit margin was 15.8%.  (FAC ¶134).  Further, Plaintiff alleges that one of Remec's best selling products "continued to lose money." <u>Id.</u>  At about this same time, during 1Q 05, Remec's auditors, Ernst and Young, advised "that if Remec couldn't deliver a good first quarter, the write-of would have to be made in the following quarter, which is exactly what happened."  <u>Id.</u>  Notably, Remec did not deliver a good 1Q 05 and Remec, following the advise of Ernst and Young, did write down goodwill impairment during

2Q 05. Id.

Plaintiff further alleges that one of Remec's most popular products, the FDUAMCO filter line, was sold with a gross profit margin of .1% and accounted for about $25 million in revenues for 2Q 05. (FAC ¶¶124-132). While sales and revenues for these products increased, the gross profit margin did not. Id. Plaintiff also alleges that Defendants Ragland and Hickman attended and participated in monthly financial review meetings (and quarterly Operations Review meetings) where they obtained the internal financial results and projections that form the basis for the allegations. (FAC ¶¶127-136).

The scienter allegations with respect to the July 31, 2004 goodwill impairment analysis encompass the allegations with respect to the December 26, 2003 goodwill impairment. Further, as the 2005 fiscal year progressed, Plaintiff alleges that profitability for about 70% of Remec's products was "hopeless" because Defendants pursued a policy of slashing prices in order "to get business now and get profit later." (FAC ¶112). This "abysmal," id., gross profit margin was allegedly known by Defendants at the time they were projecting gross profit margins of 24 - 29 %, in relation to the December 26, 2003 goodwill impairment analysis. Defendant Ragland allegedly personally promulgated the "get business at all costs" strategy and Defendant Hickman personally attended meetings regarding gross profit margin and sales forecasts for each Wireless product line. Id. Plaintiff cites to confidential witnesses to substantiate much of the detail provided in these allegations.

In sum, the court concludes that Plaintiff's new allegations, primarily set forth in the FAC at ¶99-206, adequately allege specific facts giving rise to an inference that Defendants Ragland and Hickman acted with deliberate or conscious recklessness. The specific allegations give rise to a strong inference that the assumptions underlying the goodwill impairment analysis of December 26, 2003 and July 31, 2004 were not within the broad realm of objectively reasonable assumptions when viewed in light of Remec's then existing financial condition. Accordingly, the motion to dismiss the FAC for

failure to allege scienter is denied.

### 2. Loss Causation

Defendants also move to dismiss all claims except the goodwill impairment claims on the ground that the FAC fails to adequately allege loss causation. Allegations of "loss causation" are a necessary element of a § 10(b) claim. Dura Pharmaceuticals, Inc., 544 U.S. at 342. A plaintiff must allege "a causal connection between the material misrepresentation and the loss." Id. Merely alleging that a misrepresentation caused an inflated purchase price does not, without more, demonstrate loss causation. Id. at 341-42. It is insufficient for a misrepresentation to "touch upon" an economic loss; a plaintiff must demonstrate an actual "causal connection" between the defendant's material misrepresentation and the economic loss suffered. Id. at 343. In other words, "to prove loss causation, the plaintiff must demonstrate a causal connection between the deceptive acts that form the basis for the claim of securities fraud and the injury suffered by the plaintiff." Daou, 411 F.3d at 1025.

At the pleading stage, a plaintiff need not plead loss causation with specificity. Rather, a short and plain statement that provides a "defendant with some indication of the loss and the causal connection" is adequate to establish the loss causation element. Dura, 544 U.S. at 347. For example, a plaintiff adequately pleads loss causation by alleging the disclosure of the true facts resulted in a decline in the stock price. See Daou, 411 F.3d at 1026.

Here, the FAC alleges more than that the purchase price of Remec stock was inflated at the time of purchase because of the undisclosed omissions. The FAC alleges that Remec's stock fell 18.8% in value when Remec disclosed on September 8, 2004 that it disclosed that it experienced a $5 million quarterly loss and that it was taking a $62.4 million charge based upon the goodwill impairment analysis. (FAC ¶¶12, 65). The September 8, 2004 disclosure of Remec's then existing financial condition sufficiently alleges loss causation because it provides notice to Defendants that the drop in Remec stock is causally related to the alleged financial misstatements and omissions

set forth in the FAC. At the present pleading stage, Plaintiffs adequately allege loss causation.

In sum, the court finds that Plaintiff adequately states claims for violation of the federal securities laws. Accordingly, the motion to dismiss is denied.

**IT IS SO ORDERED.**

DATED: September 25, 2006

_____
Hon. Jeffrey T. Miller
United States District Judge

cc: All parties