ROBERT W. BROWNLIE (Bar No. 138793)
GERARD A. TRIPPITELLI (Bar. No. 235788)
NOAH A. KATSELL (Bar No. 217090)
**DLA PIPER LLP (US)**
401 B Street, Suite 1700
San Diego, CA 92101-4297
Tel: 619.699.2700
Fax: 619.699.2701

Attorneys for Defendants
REMEC, INC., RONALD E. RAGLAND and
WINSTON E. HICKMAN

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: <br><br> REMEC INCORPORATED SECURITIES LITIGATION <br><br> This Document Relates to: <br><br> ALL ACTIONS | **CASE NO. 04 CV 1948 MMA (AJB)** <br><br> **DEFENDANTS' OBJECTIONS AND MOTION TO STRIKE THE DECLARATION OF ANDREW G. MINSTEIN FILED IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** <br><br> Date: February 27, 2009 <br><br> Time: 2:30 p.m. <br><br> Courtroom of the Hon. Michael M. Anello |

**TABLE OF CONTENTS**

**Page**

I. SUMMARY OF ARGUMENT ...................................................................................1

II. ONLY ADMISSIBLE EVIDENCE MAY BE CONSIDERED ON SUMMARY JUDGMENT. ...............................................................................................................1

III. WITHOUT ANY SUPPORT OR JUSTIFICATION, MINSTEIN SUBSTITUTES HIS JUDGMENT FOR THAT OF REMEC. ............................................................2

IV. MINSTEIN'S DECLARATION CONTAINS NUMEROUS MATHEMATICAL ERRORS, RENDERING HIS METHODOLOGY AND CONCLUSIONS UNRELIABLE ...........................................................................................................7

V. CONCLUSION ..........................................................................................................9

DLA PIPER LLP (US)
SAN DIEGO

Defendants REMEC, Inc. ("REMEC"), RONALD E. RAGLAND ("Ragland") and WINSTON E. HICKMAN ("Hickman") (collectively "Defendants") hereby object to and move to strike the Declaration of Andrew G. Minstein, dated December 23, 2008, submitted by Plaintiffs in Opposition to Defendants' Motion for Summary Judgment, on the grounds that it fails to meet the standards for admissibility under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) (hereinafter "*Daubert*").

## I. SUMMARY OF ARGUMENT

Plaintiffs have designated Andrew G. Minstein ("Minstein") as their primary accounting expert in this case to give "expert opinions on the accounting practices of REMEC, Inc., specifically in the areas of REMEC's opinions of Goodwill Impairment . . . and REMEC's statements concerning the return to profitability." Minstein Decl., § 2. In support of their opposition to Defendants' motion for summary judgment regarding scienter and internal controls, Plaintiffs relied extensively on Minstein's declaration, dated December 29, 2008. However, Minstein's opinions are not supported by any reliable accounting methodology, and his declaration is fraught with *accounting* errors. As such, Minstein's opinions lack any indicia of reliability, and should be excluded under *Daubert*. Consequently, Minstein's conclusions should not be considered in connection with Defendants' pending motions for summary judgment.

## II. ONLY ADMISSIBLE EVIDENCE MAY BE CONSIDERED ON SUMMARY JUDGMENT.

"It is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment." *Beyene v. Coleman Secur. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988); *FDIC v. New Hampshire Ins. Co.*, 953 F.2d 478, 484 (9th Cir. 1991) (declarations and other evidence of a party moving for summary judgment are subject to a timely objection and may be stricken). Thus, the facts relied upon when ruling on a motion for summary judgment must be admissible under the rules governing the admission of evidence. *See Hal Roach Studios, Inc. v. Feiner & Co.*, 896 F.2d 1542, 1550-1551 (9th Cir. 1990).

Whether an expert's opinion satisfies the rules of admissibility is a legal determination made by the trial judge. *See Daubert,* 509 U.S. at 589-91. The proponent of the expert has the

burden of establishing, by a preponderance of the evidence, that all of the admissibility requirements have been met. *See Bourjaily v. United States*, 483 U.S. 171, 175 (1987); *United States v. Murphy*, 457 F. Supp. 2d 1228, 1230 (D. Kan. 2006).

Pursuant to Federal Rule of Evidence 702 ("Rule 702"), the trial court is required to perform a "gatekeeping" function to ensure that proffered expert testimony is relevant, reliable and helpful to the finder of fact. Fed. R. Evid. 702; *Daubert,* 509 U.S. at 589, n.7. The court's gatekeeping function applies to all proffered expert testimony, whether based in scientific, technical or other specialized knowledge. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 151-152 (1999).

Most importantly, an expert witness must provide testimony that "will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591 (citations omitted). Given the greater potential impact of expert testimony on the trier of fact, mere relevance alone will not suffice under Rule 702. *See Redfoot v. B.F. Ascher & Co.,* 2007 WL 1593239, at *4 (N.D. Cal. 2007) ("the standard for fit [under *Daubert*] is higher than bare relevance") (citation omitted). "[T]he helpfulness requirement of Rule 702 implies a quantum of reliability beyond that required to meet a standard of bare logical relevance*." In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 857 (3d Cir. 1990) (internal quotations and citations omitted). Thus, the testimony of an expert, no matter how qualified, will not be admissible if their experience does not shed light on an issue in dispute. *See Daubert v. Merrell Dow Pharm., Inc.,* 43 F.3d 1311, 1315 (9th Cir. 1995) (the court "must ensure that the proposed expert testimony . . . logically advances a material aspect of the proposing party's case").

### III. WITHOUT ANY SUPPORT OR JUSTIFICATION, MINSTEIN SUBSTITUTES HIS JUDGMENT FOR THAT OF REMEC.

With regard to goodwill, Minstein concludes that REMEC's goodwill was impaired by a large margin at the end of fiscal year 2003 ("FY03") and fiscal year 2004 ("FY04"), and that

/////

Defendants' improperly carried the goodwill on their books during the Class Period. Specifically, Minstein opines that:

- "REMEC's goodwill was 100% impaired as of the end of the fiscal year 2003 . . . and as of the end of fiscal year 2004;"
- "REMEC's value and opinion of impairment were incorrect, as of the end of fiscal year 2003, and the end of fiscal year 2004;" and
- "REMEC's annual impairment tests [for fiscal year 2003 and 2004] should have rendered the goodwill associated with its commercial wireless division as unsupportable and should have precipitated a complete write-down of the company's goodwill associated with its commercial wireless division."

Minstein Decl., § 4, pp. 3-4. Minstein supports his conclusions by changing the assumptions used by REMEC in doing its impairment tests, and running the numbers through "a computer model . . . developed independently to assure accurate and appropriate analysis." *Id.* at p. 12.

However, in conducting goodwill impairment analysis and review, company's must "exercise considerable business judgment." *See In re Williams Secur. Litig.,* 496 F. Supp. 2d 1195, 1236, 1244-46 (N.D. Okla. 2007) (discussing the predecessor to the current accounting standard, FAS 121, and noting that "numerous judgments" need to be made to generate impairment analysis); *In re BellSouth Corp. Secur. Litig.*, 355 F. Supp. 2d 1350, 1376 (N.D. Ga. Feb. 20, 2005) (same); *In re Serologicals Secur. Litig.*, 2003 WL 24033694, at *14 (N.D. Ga. 2003) (same); *Cutsforth v. Renschler*, 235 F. Supp. 2d 1216, 1260 (M.D. Fl. 2002) (same). Both Plaintiffs and Minstein have acknowledged as much. *See* Pl. Opp., 3:18-19 ("As noted in Defendants' public statements, and by [Minstein], a slight variance in the sales growth and gross profit margin . . . estimates can significantly impact fair value and expected future cash flows [and a] variance in the discount rate or gross margin assumptions could have a significant impact on the amount of identified goodwill impairment.") (internal quotations omitted) (citing Minstein Decl., Exh. A at 19, Exh. 1, ¶ 24). What Minstein fails to explain or justify is how or why the assumptions he made are more appropriate than the assumptions used by REMEC in 2003 and 2004 *or* by REMEC's outside auditors, Ernst & Young, who signed off on REMEC's goodwill

-3-

1  assumptions and analyses.  In essence, Minstein simply substitutes his judgment for that of
2  REMEC's, and concludes that REMEC was wrong.  Minstein's methodology without analysis or
3  support is not the type of scientific methodology called for in *Daubert*.  *See* 509 U.S. at 593-94.

4     In so doing, Minstein does not even refer to, much less test against, the relevant standard
5  for when accounting judgments can lead to liability under Section 10(b); i.e., "the accounting
6  judgments which were made were such that no reasonable accountant would have made the same
7  decisions if confronted with the same facts."  *In re Wet Seal, Inc. Sec. Litig.*, 518 F. Supp. 2d
8  1148, 1163 (C.D. Cal. 2007) (quoting *DSAM Global Value Fund v. Altris Software, Inc.*, 288
9  F.3d 385, 390 (9th Cir. 2002)); *accord In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1426
10  (9th Cir. 1994) ("[Scienter] requires more than a misapplication of accounting principles.  The
11  [plaintiff] must prove that the accounting practices were so deficient that the audit amounted to no
12  audit at all, or an egregious refusal to see the obvious, or to investigate the doubtful, or that the
13  accounting judgments which were made were such that no reasonable accountant would have
14  made the same decisions if confronted with the same facts.") (citation omitted).  Minstein
15  opinions about the assumptions he would use without reference to the controlling standard or
16  without saying that "no reasonable accountant would have made the same decisions if confronted
17  with the same facts" are not relevant and, ergo, non-helpful.  *See Daubert,* 509 U.S. at 591
18  (citations omitted).

19     For example, Minstein criticizes and changes the key assumptions used in REMEC's
20  goodwill impairment analysis: its revenue assumptions, its gross margin assumptions, and its
21  operating expense assumptions.  *See* Minstein Decl. at p. 18.  Minstein then replicates REMEC's
22  impairment analysis *using his assumptions* and concludes that REMEC's goodwill was impaired.
23  *Id.* at p. 13.  In addition to failing to reference the applicable standard, the problem with
24  Minstein's report is that he does not give *any* basis or justification for the numbers that he used,
25  as opposed to the numbers that REMEC used.  Further, Minstein does not acknowledge or
26  address that Ernst & Young considered the assumptions used by REMEC in its independent
27  financial statement audit of REMEC's financial statements, and concluded that they were
28  reasonable.  *See, e.g.,* Katsell Decl., Exh. 8 (Deposition of Niki Krutop at 280:22-25, 281:2-3).

-4-

1   Again, Minstein simply substitutes his judgment for that of Ernst & Young's, and ignores that in
2   order to meet the appropriate legal standard above, he would have to demonstrate not only that no
3   reasonable accountant would have used REMEC's numbers, but that no reasonable accountant
4   would have agreed with Ernst & Young, either.
5        *In re Williams Securities Litigation*, 496 F. Supp. 2d 1195 (N.D. Okla. 2007) is instructive
6   in this regard, although in that case, goodwill impairment under Financial Accounting Standard
7   ("FAS") 121 (predecessor to FAS 142)[1] was at issue.  In determining that plaintiffs' accounting
8   experts had not provided sufficient justification for their opinions (in part because they failed to
9   consider the company's business plans in doing their impairment analysis) the court reasoned:

> It bears repeating that [plaintiffs' experts were] not doing 'first instance' auditing in this case.  Especially where professional judgment is involved (and has been seen, the performance of an FAS 121 impairment analysis is a process that is shot through with judgment calls), an expert's opinion as to how *he* would have performed a task is of limited relevance at best unless he has given a reasoned explanation of why the most obvious alternative . . . is inappropriate and should consequently be rejected.

15  *Id.* at 1248.  The court went on to state that "[u]nder Rule 702, it behooves the retained expert to
16  use reliable principles and methods.  Alteration of an established methodology is a step that
17  renders the analysis unreliable and renders the expert's testimony inadmissible." *Id.* at 1246
18  (internal quotations and citations omitted).
19       Here, Minstein simply concludes that REMEC should have performed goodwill
20  impairment tests on various dates (based on his conclusion that factors of impairment were
21  present), but he does not perform such tests.  *See* Minstein Decl. at p. 3 ("should have performed
22  an impairment test for the quarter ending May 2, 2003, . . . August 1, 2003, . . . October 31,
23  2003, . . . April 30, 2004).  Consequently, Minstein cannot opine that REMEC's goodwill was
24  impaired on those dates.  *See Trevino v. Gates,* 99 F.3d 911, 922 (9th Cir. 1996) ("Where
25  foundational facts demonstrating relevancy . . . are not sufficiently established, exclusion of
26  proffered expert testimony is jusitified.") (citation omitted); *Daubert,* 509 U.S. at 590 (an expert's

---

[1] FAS 142 superseded FAS 121, and went into effect for the fiscal year beginning after December 15, 2001.

opinion cannot be based upon merely subjective belief or unsupported speculation); *In re Blech Secur. Litig.,* 2003 WL 1610775, at *23 (S.D.N.Y. 2003) ("General statements without adequate factual support are inadmissible"). More importantly, however, Minstein cannot point to any reason why *his* business and accounting judgment in determining that an interim impairment test should have been performed is any better than REMEC's business and accounting judgment in not performing an interim test. Moreover, Minstein did not review the deposition testimony of any of REMEC's managers that performed the various impairment tests during the Class Period to understand the bases for the assumptions REMEC used. *See* Minstein Decl., Exh. 3; *see also Barber v. United Airlines, Inc.*, 17 Fed. Appx. 433, 437 (7th Cir. 2001) ("selective use of facts fails to satisfy the scientific method and *Daubert*, and it thus fails to 'assist the trier of fact'") (citation omitted); *MicroStrategy Inc. v. Business Objects, S.A.,* 429 F.3d 1344, 1355 (Fed. Cir. 2005) ("While an expert need not consider *every* possible factor to render a "reliable" opinion, the expert still must consider *enough* factors to make his or her opinion sufficiently reliable in the eyes of the court."); *Miller v. Pfizer, Inc.*, 196 F. Supp. 2d 1062, 1087 (D. Kan. 2002) (excluding expert testimony because witness gave "scant attention" to unsupportive evidence).

Bottom line, "accountants might reasonably reach different conclusions about the application of [goodwill impairment analysis]." *Cutsforth,* 235 F. Supp. 2d at 1260 (discussing lack of bright line test under FAS 121). Neither FAS 121 nor FAS 142 provide "bright-line" tests, but rather, call for the exercise of business and accounting judgment. To the contrary, the accounting rules (and FAS 142) anticipate and require that companies exercise considerable business judgment in performing an impairment review. *See In re K-Tel Intern., Inc. Secur. Litig.*, 300 F.3d 881, 905 (8th Cir. 2002) ("The accounting standards are not bright line rules, and application of them requires judgment calls."); *see also SEC v. Arthur Young & Co.*, 590 F.2d 785, 788 n.2 (9th Cir. 1979) (citing AICPA, Professional Standards, Statements on Auditing Standards No. 1, § 150.01) ("Generally accepted accounting standards are general standards of conduct relating to the auditor's professional qualities as well as to the judgments exercised by him in the performance of his examination and issuance of his report"); *In re Reliance Secur. Litig.*, 91 F. Supp. 2d 706, 722 (D. Del. 2000) ("Because the correct application of accounting

standards is a matter of professional judgment, allegations that a defendant failed to adhere to accounting principles, without more, are not generally actionable."). Because Minstein failed to provide any rationale for why his judgment should substituted for REMEC's or why his assumptions are more realistic than those used by REMEC's, his conclusions are unreliable and should be excluded. *See De Jager Const., Inc. v. Schleininger,* 938 F. Supp 446, 455 (W.D. Mich. 1996) (excluding expert opinion where expert made unsupported assertions and projections, ignored documents and figures, and chose among purported facts to support plaintiff's claims).

### IV. MINSTEIN'S DECLARATION CONTAINS NUMEROUS MATHEMATICAL ERRORS, RENDERING HIS METHODOLOGY AND CONCLUSIONS UNRELIABLE.

The impairment analysis performed by Minstein and relied upon by Plaintiffs in their Opposition contains numerous significant errors, rendering his conclusions unreliable and inadmissible. *See, e.g., Dart v. Kitchens Bros. Mfg. Co.*, 2007 WL 3283750 at *3 (5th Cir. 2007) (testimony excluded where expert could not explain how he came to certain conclusions, and testimony was replete with mathematical errors); *Haddad v. Rav Bahamas, Ltd.*, 2008 WL 5203599 (S.D. Fla. 2008) (finding expert report not helpful to trier of fact where expert made significant accounting error).

For example,[2] Minstein asserts in Exhibit 13 to his Declaration that one of the "key assumptions" he relied upon in his FY04 impairment analysis was that revenue should "[g]row 30% from 2004 base of $295,000 for two years, then grow 10% per year for the remainder of the projection period." Minstein Decl., p. 13. In other words, Minstein assumed, for the purpose of his FY04 impairment analysis, that revenue would grow by 30% between 2004 and 2005, and again by 30% between 2005 and 2006. However, in the model that Minstein actually ran, Minstein used revenue growth of only 10% between 2005 and 2006. *See id.* at Exh. 12 (reflecting revenue estimates with 10%, not 30% growth between 2005 and 2006).

/////

---

[2] For a complete explanation of the mathematical errors made by Minstein in his report, Defendants refer the Court to the Declaration of Noah A. Katsell, filed concurrently herewith ("Katsell Decl."), Exh. 9 (Holder Report), section V(A).

Minstein also made significant errors relating to: calculating income taxes in both his FY03 and FY04 models (*see id.* Exh. 13); calculation of depreciation in his FY04 model (*see id.* at Exh. 12); and calculating net working capital in FY03 (*see id.* at Exh. 14). The list goes on. The number and scope of the mathematical errors in Minstein's declaration render his assumptions and conclusions unreliable, and therefore, inadmissible. *See Gerrard v. A.J. Gerrard & Co.*, 2003 WL 25689968, at *1 (S.D. Ga. 2003) ("expert testimony does not assist if it is based on factual assumptions that are not supported by the evidence") (citing *United States v. City of Miami, Fla.*, 115 F.3d 870, 873 (11th Cir. 1997)); *see also Guillory v. Domtar Indus. Inc.*, 95 F.3d 1320, 1331 (5th Cir. 1996) ("nothing in rule 703 requires a court to admit an opinion based on facts that are indisputably wrong").

In addition, there are numerous instances in Minstein's declaration where he makes unsupported and conclusory statements. For example, Minstein argued: REMEC "[i]gnored actual operating losses incurred in fiscal years 2001, 2002, and 2003 in the impairment tests." Minstein Decl., p. 20. However, Minstein does not refer to any specific documents, testimony or exhibits to support this claim, nor does he explain how or why, in his opinion, actual operating losses should have been considered in the impairments tests *or* why his opinion that they should have been considered carries more weight than Ernst & Young's opinions that REMEC's impairment test and the assumptions underlying it were reasonable.

Other instances where Minstein made completely unsupported allegations and conclusions include, but are not limited to:

- "The assumptions used in preparing [Minstein's goodwill] analysis are considered realistic if management makes all necessary steps toward optimal operations." Minstein Decl., p. 14.
- "[T]he guideline companies were poorly chosen or selected with a goal of manipulating data to achieve a desired result." *Id.* at p. 17.
- "REMEC ignored the downward pressure on gross margins that would result from increased manufacturing costs, competitive pricing pressures, and issues in achieving projected cost savings." *Id.* at p. 18.

-8-

- "The fact that extreme assumptions were used in arriving at conclusions that there was no impairment of goodwill in either FY 2003 or FY 2004 is powerful evidence that management willfully used unrealistic and deceptive assumptions to force a conclusion that was unrealistic, untrue and deceptive. *Id.* at p. 22.

Such *ipse dixit* is inadmissible under *Daubert* and its progeny. *See* Federal Rules of Evidence 702 and 703 (requiring that an expert's opinion have some basis in fact); *see also Polk v. Ford Motor Co.*, 529 F.2d 259, 271 (8th Cir. 1976) (there must be "sufficient facts already in the evidence or disclosed by the witness as a result of his investigation to take such testimony out of the realm of guesswork and speculation"); *Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 886 (10th Cir. 2005) ("when an [expert's] conclusion simply does not follow from the data, a district court is free to determine that an impermissible analytical gap exists between premises and conclusion.") (citation omitted).

## V. CONCLUSION

To avoid exclusion, "an expert's testimony must be based on scientific knowledge, which implies a grounding in the methods and procedures of science based on actual knowledge, not subjective belief or unsupported speculation. *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th Cir. 2003) (citation omitted). Minstein's declaration does not meet this standard. Thus, Defendants respectfully request that his declaration be excluded as unreliable and inadmissible.

Dated: February 9, 2009      DLA PIPER US LLP

         s/ Robert W. Brownlie
         Robert W. Brownlie
         Attorney for Defendants
         REMEC, INC., RONALD E. RAGLAND and
         WINSTON E. HICKMAN