1   Jeff S. Westerman (SBN 94559)
       jwesterman@milberg.com
2   Michiyo Michelle Furukawa (SBN 234121)
       mfurukawa@milberg.com
3   **MILBERG LLP**
    One California Plaza, Suite 3900
4   Los Angeles, California 90071
    Telephone: (213) 617-1200
5   Facsimile: (213) 617-1975

6   David J. Noonan (SBN 55966)
    Micaela P. Shelton (SBN 226656)
7   Christopher T. Wright (SBN 227693)
    **KIRBY NOONAN LANCE & HOGE LLP**
8   350 Tenth Avenue, Suite 1300
    San Diego, California  92101-8700
9   Telephone: (619) 231-8666
    Facsimile: (619) 231-9593
10
    Attorneys for Plaintiff
11

12              **UNITED STATES DISTRICT COURT**

13           **SOUTHERN DISTRICT OF CALIFORNIA**

14

15   IN RE: REMEC INCORPORATED              CASE No. 04 CV 1948 MMA (AJB)
     SECURITIES LITIGATION,
16                                          PLAINTIFFS' SUPPLEMENTAL BRIEF IN
     This Document Relates to:             OPPOSITION TO DEFENDANTS' MOTION
17                                          FOR SANCTIONS
              ALL ACTIONS.
18
                                           Hearing Date: July 29 and 30, 2009
19                                          Time:          9:00 a.m.
                                           Court Room:    5
20                                          Judge:         Hon. Michael M. Anello

21

22

23

24

25

26

27

28

*Kirby Noonan Lance & Hoge LLP*
*350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700*

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

II.  PLAINTIFFS AND PLAINTIFFS' COUNSEL ACTED PROPERLY IN
     UTILIZING DOCUMENTARY AND TESTIMONIAL EVIDENCE FROM
     REMEC'S FORMER EMPLOYEES ...................................................................... 3

     A.   Federal Securities Fraud Plaintiffs and Their Counsel Have Both the Right
          and the Duty to Secure Information Outside of the Formal Discovery
          Process ........................................................................................... 3

          1.   Plaintiffs and Their Counsel Can and Should Conduct Independent
               Investigations to Garner Evidence to Support Plaintiffs' Case ...................... 3

          2.   The PSLRA's Heightened Pleading Standards Require Plaintiffs and
               Their Counsel to Seek Internal Documents and Testimonial
               Evidence ..................................................................................... 6

     B.   In Conducting Their Required Inquiry, Plaintiffs and Their Counsel
          Behaved Lawfully and Appropriately In Interviewing Former Employees
          and Gathering Public and Non-Public Documents. ........................................ 9

     C.   It is Contrary to Public Policy to Permit Defendants to Use
          "Confidentiality" Agreements to Mask Securities Fraud, Particularly Where
          There Are No Legitimate Competitive Interests to Protect ............................. 13

     D.   Plaintiffs' Counsel Properly Compensated Ms. Robinson For Time Spent In
          Connection With This Litigation ................................................................. 15

III. DEFENDANTS HAVE NO EVIDENCE TO SUPPORT THEIR INVOCATION
     OF THE COURT'S INHERENT AUTHORITY .................................................... 16

     A.   An Award of Inherent Authority Sanctions Can Only Be Made Upon a
          Specific Finding of Bad Faith. .................................................................. 16

     B.   A Heightened Burden of Proof is Appropriate for Inherent Authority
          Sanctions. .............................................................................................. 17

     C.   This Case Does Not Present the Extreme Circumstances of Willfulness or
          Bad Faith Required to Justify Terminating Sanctions. ..................................... 18

IV.  CONCLUSION ........................................................................................... 19

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

**CASES**

3

4

*Aoude v. Mobil Oil Corp.*,
  892 F.2d 1115 (1st Cir. 1989) ...................................................................... 17

5

*Balcar v. Bell and Assocs. LLC*,
  295 F. Supp. 2d 635 (N.D. W. Va. 2003) .................................................... 17

6

7

*Chambers v. Capital Cities/ABC*,
  159 F.R.D. 441 (S.D.N.Y. 1995) ............................................................ 13, 16

8

*Chambers v. NASCO, Inc.*
  501 U.S. 32 (1991) ........................................................................................ 16

9

10

*Chaves v. M/V Medina Star*,
  47 F.3d 153 (5th Cir. 1995) .......................................................................... 17

11

*Conmar Prods. Corp. v. Universal Slide Fastener Co.*,
  172 F.2d 150 (2nd Cir. 1949) ....................................................................... 10

12

13

*Cont'l Ins. Co. v. Sup. Ct.*,
  32 Cal.App.4th 94 (Cal. Ct. App. 1995) ........................................................ 4

14

15

*E-Smart Techs., Inc. v. Drizin*,
  2009 WL 35228 (N.D. Cal. Jan. 6, 2009) .................................................... 11

16

*Erum v. County of Kauai*,
  No. 08-cv-00113, 2008 U.S. Dist. LEXIS 52272 (D. Haw. June 30, 2008) .......................... 16

17

18

*F.J. Hanshaw Enters., Inc., v. Emerald River Dev., Inc.*,
  244 F.3d 1128 (9th Cir. 2001)...................................................................... 17

19

*FDIC v. Conner*
  20 F.3d 1376 (5th Cir. 1994) ........................................................................ 18

20

21

*George v. Indus. Maint. Corp.*,
  305 F. Supp. 2d 537 (D. V.I. 2002) ........................................................... 9, 14

22

23

*Halaco Eng'g Co. v. Costle*,
  843 F.2d 376 (9th Cir. 1988) ........................................................................ 18

24

*Hamilton v. Gen. Motors Corp.*,
  490 F.2d 223 (7th Cir. 1973) ........................................................................ 15

25

26

*Hepting v. AT & T Corp.*,
  439 F.Supp.2d 974 (N.D. Cal. 2006) ........................................................... 14

27

28

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

*In re Ashanti Goldfields Secs. Litig.,*
    184 F.Supp.2d 247 (E.D.N.Y. 2002) ................................................................ 2, 6

*In re Connectics Corp. Secs. Litig.,*
    542 F.Supp.2d 996 (N.D. Cal. 2008) ................................................................ 5

*In re Daou Sys., Inc. Secs. Litig.,*
    411 F.3d 1006 (9th Cir. 2005) ................................................................ 7

*In re EXDS, Inc.,*
    2005 WL 2043020 (N.D. Cal. Aug. 24, 2005) ................................................................ 4, 5

*In re Exxon Valdez*
    102 F.3d 429 (9th Cir. 1996) ................................................................ 18

*In re Flir Systems, Inc. Sec. Litig.,*
    2000 WL 33201904 (D. Or. Dec. 13, 2000) ................................................................ 13

*SG Cowen Sec. v. U.S. District Court for the Northern Dist. of Cal.,*
    189 F.3d 909, 911 (9th Cir. 1999) ................................................................ 13

*In re Home Shopping Network, Inc. Sec. Litig.,*
    1989 WL 201085 (M.D. Fla. June 22, 1989) ................................................................ 4

*In Re Keegan Mgmt. Co. Sec. Litig.,*
    78 F.3d 431 (9th Cir. 1996) ................................................................ 16

*In re Miva, Inc., Secs. Litig.,*
    511 F. Supp. 2d 1242 (M.D. Fla. 2007) ................................................................ 8

*In re Silicon Graphics Inc., Sec. Litig.,*
    183 F.3d 970 (9th Cir. 1999) ................................................................ 3, 6, 7

*In re Stone & Webster, Inc., Secs. Litig.,*
    414 F.3d 187 (1st Cir. 2005) ................................................................ 7

*In re Tyco International Ltd., Sec. Litig.,*
    2001 WL 34075721 (D.N.H. Jan. 30, 2001) ................................................................ 4

*In re Vantive Corp. Secs. Litig.,*
    283 F.3d 1079 (9th Cir. 2002) ................................................................ 8

*In re: JDS Uniphase Corp. Securities Litigation,*
    238 F.Supp.2d 1127 (N.D. Cal. 2002) ................................................................ 2, 13, 15

*Jackson v. Microsoft Corp.,*
    211 F.R.D. 423 (W.D. Wash. 2002) ................................................................ 11

*Josephson v. Marshall,*
    2001 WL 815517 (S.D.N.Y. July 19, 2001) ................................................................ 9

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

*Kirshner v. Uniden Corp. of America,*
    842 F.2d 1074 (9th Cir. 1988)..................................................................................... 4, 5

*Leon v. IDX Sys. Corp.,*
    464 F.3d 951 (9th Cir. 2006)......................................................................................... 16

*Lipton v. Pathogenesis Corp.,*
    284 F.3d 1027 (9th Cir. 2002)......................................................................................... 8

*Los Angeles News Serv. v. CBS Broadcasting, Inc.,*
    305 F.3d 924 (9th Cir. 2002)........................................................................................... 4

*Macias v. McGrath,*
    439 F.3d 1141 (9th Cir. 2006)....................................................................................... 17

*Madanes v. Madanes,*
    186 F.R.D. 279 (S.D.N.Y. 1999)........................................................................... 9, 10, 14

*Maynard v. Nygren,*
    332 F.3d 462 (7th Cir. 2003)......................................................................................... 17

*No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. West Holding Corp.,*
    320 F.3d 920 (9th Cir. 2003)........................................................................................... 8

*Nursing Home Pension Fund, Local 144 v. Oracle Corp.,*
    380 F.3d 1226 (9th Cir. 2004)...................................................................................... 5, 7

*Oliveri v. Thompson,*
    803 F.2d 1265 (2d Cir. 1986)....................................................................................... 17

*Perna v. Electronic Data Sys. Corp.,*
    916 F.Supp. 388 (D.N.J. 1995) ..................................................................................... 11

*Polycast Tech. Corp. v. Uniroyal, Inc.,*
    129 F.R.D. 621 (S.D.N.Y. 1990)................................................................................... 4, 5

*Prasad v. MML Investors,*
    2004 U.S. Dist. LEXIS 9289 (S.D.N.Y. May 24, 2004)................................................. 15

*Primus Auto. Fin. Servs. v. Batarse,*
    115 F.3d 644 (9th Cir. 1997)........................................................................................ 16

*Quantum Communic'ns. Corp. v. Star Broad. Inc.,*
    473 F. Supp. 2d 1249 (S.D. Fla., 2007)......................................................................... 17

*Rico v. Mitsubishi,*
    42 Cal.4th 807 (Cal. 2007)............................................................................................ 11

*Roadway Express, Inc. v. Piper,*
    447 U.S. 752 (1980)..................................................................................................... 16

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

*Schlaifer Nance & Co. v. Estate of Warhol,*
   742 F.Supp. 165 (S.D.N.Y. 1990) ............................................................ 9, 10

*Scholastic Inc. v. Stouffer,*
   221 F. Supp. 2d 425 (S.D.N.Y. 2002) ........................................................ 17

*Seattle Times Co. v. Rhinehart,*
   467 U.S. 20 (1984) ........................................................................................ 4

*Shanahan v. Vallat,*
   2006 WL 3317018 (S.D.N.Y. Nov. 15, 2006) ........................................... 5, 9

*Shepherd v. American Broad. Co., Inc.,*
   62 F.3d 1469 (D.C. Cir. 1995) ............................................................... 17, 18

*State Compensation Insurance Fund v. WPS Inc.,*
   70 Cal. App. 4th 644 (Cal. Ct. App. 1999) ............................................... 11

*State of New York v. Solvent Chem. Co.,*
   166 F.R.D. 284 (W.D.N.Y. 1996) ............................................................. 15

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
   551 U.S. 308, 127 S. Ct. 2499 (2007) ................................................. 3, 6, 7

*Whittaker Corp. v. Execuair Corp.,*
   736 F.2d 1341 (9th Cir. 1984) .................................................................... 4

*Zucco Partners v. Digimarc Corp.,*
   552 F.3d 981 (9th Cir. 2009) ...................................................................... 6

**STATUTES**

15 U.S.C. § 78u-4(b)(1), (2) and (3) ............................................................. 3

Private Securities Litigation Reform Act of 1995 ("PSLRA") ..................... 2, 3

**OTHER AUTHORITIES**

ABA Formal Op. 91-359 (1991) .................................................................... 4

ABA Formal Opinion 06-440 ....................................................................... 11

ABA Formal Opinion 94-382. In 2006 ........................................................ 11

ABA Formal Opinion 96-402 (1996) ........................................................... 15

Federal Rule of Civil Procedure Rule 11 ...................................................... 5

Federal Rules of Civil Procedure Rule 26(a)(5) ............................................ 4

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

Federal Rules of Civil Procedure Rule 26(b)(5)(B) ............................................................. 12

F.R.E. 502(3) ......................................................................................................................... 12

First Amendment .................................................................................................................... 4

Formal Opinion 06-440 ......................................................................................................... 11

Formal Opinion 94-382 ......................................................................................................... 11

Rule of Professional Conduct 1.3 & cmt. [1] ........................................................................ 5

Rule of Professional Conduct 4.2, cmt. [7] ........................................................................... 4

Rule of Professional Conduct 4.4(b) ................................................................................. 11, 12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

1    Plaintiffs respectfully submit this Memorandum of Points and Authorities concerning

2  certain of the legal issues and matters which will be before this Court with respect to the hearing

3  on Defendants' Motion for Sanctions on July 29 and 30, 2009.  A more complete exposition of the

4  pertinent facts will be presented at that time.  Plaintiffs reserve the right to supplement this

5  Memorandum of Points and Authorities as additional issues arise in the course of these hearings.

6  **I.    INTRODUCTION AND SUMMARY OF ARGUMENT**

7    On the eve of trial, after the production and review of over 3 million pages of documents,

8  the taking of over twenty depositions, and extensive motion practice, Defendants now seek

9  dismissal of the entire action based upon Plaintiffs' counsel's acquisition of internal documents

10  during the pleading stage of this case.  Defendants' counsel have been aware of Plaintiffs'

11  possession of internal company documents and Plaintiffs use of the documents in the Fourth

12  Amended Complaint (the "Complaint") for well over three years.  In their Ex-Parte Application

13  for Leave to Amend Complaint ["Ex-Parte Application"], filed April 13, 2006, Plaintiffs timely,

14  openly, and specifically disclosed to Defendants and the Court *inter alia* that:

15       1.    Plaintiffs' Lead Counsel, through their investigative efforts, obtained

16             approximately 60,000 pages of internal documents in March and April

17             2006; and

18       2.    The source of the 60,000 documents were "witnesses".

19  [Ex-Parte Application, Exhibit 1, pp 3 – 6.]

20    When informed of Plaintiffs' intent to seek an extension for the filing of the Complaint in

21  light of new documents obtained by Plaintiffs, Defendants' counsel stated he did not oppose the

22  application .  See Declaration of Karen T. Rogers in Support of Lead Plaintiffs' Ex Parte

23  Application for Leave to Amend Complaint ("Rogers Decl.") ¶6.   The Court granted the motion

24  to allow Plaintiffs to make use of the documents in the Complaint.

25    Defendants moved to dismiss the Complaint on numerous grounds, however they did not

26  assert that the documents, which were cited extensively throughout the Complaint, were obtained

27  through "theft," "bribery," or "criminal misconduct," as they allege now.  Indeed, Defendants

28  were entirely dismissive of the import and value of the documents used in the Complaint.  Only

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

1    years later, after the Class was certified and the parties engaged in extensive discovery and motion

2    practice, do Defendants bring this Motion for Sanctions.

3        Defendants shoulder a heavy burden in attempting to demonstrate that Plaintiffs or their

4    counsel engaged in any wrongdoing.  The facts will demonstrate that the conduct of Plaintiffs'

5    counsel was appropriate, and that Defendants' allegations lack any good faith factual basis.

6        The investigative efforts undertaken by Plaintiffs' counsel are supported by case law and

7    are in compliance with canons of ethics.  It is the right and duty of Plaintiffs' counsel to conduct

8    informal factual investigations especially in light of the automatic stay provision under the Private

9    Securities Litigation Reform Act of 1995 ("PSLRA") preventing plaintiffs from engaging in

10   formal discovery until after a district court has ruled on the sufficiency of the complaint.  Indeed,

11   informal investigations are often the only means by which plaintiffs can gather the documentary

12   and testimonial evidence necessary to meet the stringent pleading standards under the PSLRA.

13   *See In re Ashanti Goldfields Secs. Litig.*, 184 F.Supp.2d 247, 258 (E.D.N.Y. 2002) ("[H]eightened

14   pleading requirements often put plaintiffs in a Catch-22 in securities fraud cases.  Many plaintiffs

15   do not have access to internal documents of the entities against which they wish to file claims, but

16   those documents are the best way to demonstrate the alleged fraud.").

17       Further, Defendants cannot shield their fraud with a boilerplate confidentiality agreement

18   signed by one of Remec's ex-employees.  As the District Court for the Northern District of

19   California aptly stated in circumstances similar to those here, including a remarkably similar

20   boilerplate confidentiality agreement:  "Disclosures of wrongdoing do not constitute revelations of

21   trade secrets which can be prohibited by agreements binding on former employees." *In re: JDS*

22   *Uniphase Corp. Securities Litigation*, 238 F.Supp.2d 1127, 1136 (N.D. Cal. 2002) (quoting

23   *McGrane v. The Reader's Digest Association, Inc.*, 822 F.Supp. 1044, 1052 (S.D.N.Y 1993)).

24       Defendants' fraud should not be shielded by their hollow allegations of "theft," "bribery,"

25   and "criminal misconduct."  The motion for sanctions should be rejected, and Plaintiffs should be

26   allowed to proceed to trial.

27

28

*Kirby Noonan Lance & Hoge LLP*
*350 Tenth Avenue, Suite 1300 San Diego, California  92101-8700*

**II.    PLAINTIFFS AND PLAINTIFFS' COUNSEL ACTED PROPERLY IN UTILIZING DOCUMENTARY AND TESTIMONIAL EVIDENCE FROM REMEC'S FORMER EMPLOYEES**

Plaintiffs utilized numerous documents and testimonial evidence from over thirty confidential witnesses in supporting their claims for securities fraud against Defendants.  During Plaintiff's investigation of Defendants' wrongdoing, one of Remec's former employees, Lisa Robinson, voluntarily provided Plaintiffs' investigators with documents that Plaintiffs believed and still believe were lawfully obtained by her.  Defendants move for terminating sanctions based on Plaintiffs' conduct in accepting these documents from Ms. Robinson and using them in this litigation.  There is nothing legally or ethically wrong with Plaintiffs use of these documents to demonstrate Defendants' fraud.  No good cause exists for sanctions here.

**A.    Federal Securities Fraud Plaintiffs and Their Counsel Have Both the Right and the Duty to Secure Information Outside of the Formal Discovery Process.**

Congress enacted the Private Securities Litigation Reform Act of 1995 ("PSLRA") to check abusive securities fraud litigation.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 127 S. Ct. 2499, 2508 (2007); *In re Silicon Graphics Inc., Sec. Litig.*, 183 F.3d 970, 973 (9th Cir. 1999).  Among the control measures Congress included in the PSLRA are heightened pleading standards for private securities fraud claims and an automatic stay provision preventing plaintiffs from engaging in formal discovery until after a district court has ruled on the sufficiency of the complaint.  15 U.S.C. § 78u-4(b)(1), (2) and (3).  As a result of these measures, plaintiffs and their counsel often support claims of securities fraud by gathering internal company documents and statements from former company employees outside of the formal discovery process.  Counsel are subject to legal and ethical duties to pursue all available means of factual investigation with diligence and zeal.  As will be demonstrated in the hearing, Plaintiffs'counsel's efforts were lawfully and ethically sound.

**1.    Plaintiffs and Their Counsel Can and Should Conduct Independent Investigations to Garner Evidence to Support Plaintiffs' Case.**

It is well-settled that litigants are entitled to gather evidence without going through the formal discovery process, and to make use of such independently-obtained evidence in litigation.

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California  92101-8700

1   *See, e.g., Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34 (1984) (distinguishing between

2   information obtained through discovery from that which is "gained through means independent of

3   the court's processes"); *Los Angeles News Serv. v. CBS Broadcasting, Inc.*, 305 F.3d 924, 933 (9th

4   Cir. 2002) (stating that even if parties had not stipulated to extend discovery past the discovery

5   cutoff date, the plaintiff still "would have been able to search for evidence on its own through

6   means not within the meaning of 'discovery' in Rule 26(a)(5) of the Federal Rules of Civil

7   Procedure"); *Polycast Tech. Corp. v. Uniroyal, Inc.*, 129 F.R.D. 621, 628 (S.D.N.Y. 1990)

8   (describing policy favoring use of "informal information gathering" as distinct from formal

9   discovery).  In fact, the right of litigants to make use of evidence obtained outside of the discovery

10   process is protected by the First Amendment, and cannot be restricted to the same degree as

11   discovered evidence.  *See Seattle Times Co., supra*, at 34; *Kirshner v. Uniden Corp. of America*,

12   842 F.2d 1074, 1081 (9th Cir. 1988); *Whittaker Corp. v. Execuair Corp.*, 736 F.2d 1341, 1347 (9th

13   Cir. 1984).

14          The right to engage in independent investigation encompasses the general right of litigants

15   to seek out and interview former employees of adverse parties.  *See, e.g., In re EXDS, Inc.*, 2005

16   WL 2043020, at *3 (N.D. Cal. Aug. 24, 2005); *Cont'l Ins. Co. v. Sup. Ct.*, 32 Cal.App.4th 94, 118-

17   21 (Cal. Ct. App. 1995) (agreeing with majority of jurisdictions that *ex parte* communications with

18   former employees is permissible); ABA Model Rule of Professional Conduct 4.2, cmt. [7]

19   ("Consent of the organization's lawyer is not required for communication with a former

20   constituent."); ABA Formal Op. 91-359 (1991) (Model Rule 4.2 does not bar ex parte

21   communication with an adversary's former employees).  This is because "prohibiting attorneys

22   from contacting an opponent's former employees would unfairly hinder litigants from

23   investigating and pursuing factual evidence relevant to their case."  *In re EXDS, Inc., supra*, at *3;

24   *See also, In re Tyco International Ltd., Sec. Litig.*, 2001 WL 34075721 at *3 (D.N.H. Jan. 30,

25   2001) ("neither logic, tradition, the constitution nor the PSLRA prohibit interviewing prospective

26   witnesses"); *In re Home Shopping Network, Inc. Sec. Litig.*, 1989 WL 201085 at *1 (M.D. Fla.

27   June 22, 1989) (plaintiffs may interview defendant's former employees).

28          Thus, Courts have consistently rejected attempts, such as the one belatedly made by

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California  92101-8700

1   Defendants here, to prohibit adversaries from communicating with former employees through the

2   use of vague and generalized assertions that such employees might disclose attorney-client

3   privileged information; instead, the onus is on employers to seek protective orders on a case-by-

4   case basis whenever there is a legitimate risk that a former employee might disclose privileged

5   information. *See, e.g., In re EXDS, Inc., supra,* at *3 ("[I]t is incumbent on the former employer

6   to seek a protective order if it is concerned that there is a risk that a former employee might

7   disclose privileged information."); *Polycast Tech. Corp., supra,* at 627-628 ("interest in

8   preventing inadvertent disclosure of privileged material does not justify a blanket ban on

9   communication with the opposing party's former employees"; after "case-by-case" determination

10   of whether there is a "strong likelihood" that privileged information is implicated, appropriately

11   tailored protective order can be used).

12        Plaintiffs and their counsel acted properly here in gathering documents outside of formal

13   discovery for use in litigation. *See, e.g., Kirshner, supra,* at 1081; *Shanahan v. Vallat,* 2006 WL

14   3317018, at *2 (S.D.N.Y. Nov. 15, 2006) ("routine" for party to seek out and gather documents

15   through informal channels). Counsel's investigation and attempt to gather both public and non-

16   public company documents is not only expected but almost required in the federal securities law

17   context. *See, e.g., Nursing Home Pension Fund, Local 144 v. Oracle Corp.,* 380 F.3d 1226, 1230

18   (9th Cir. 2004) ("The most direct way to show both that a statement was false when made and that

19   the party making the statement knew that it was false is via contemporaneous reports or data,

20   available to the party, which contradict the statement.").

21        For counsel, the task of "conduct[ing] a reasonable factual investigation" prior to filing a

22   complaint, is not just a right, but an affirmative and non-delegable duty imposed by Federal Rule

23   of Civil Procedure 11 in all federal cases, including those asserting claims of securities fraud. *In

24   re Connectics Corp. Secs. Litig.,* 542 F.Supp.2d 996, 1005 (N.D. Cal. 2008) (quoting *Christian v.

25   Mattel, Inc.,* 286 F.3d 1118, 1127 (9th Cir. 2002)). Counsel are further bound by the rules of

26   professional conduct to carry out all such litigation activities with "reasonable diligence" and

27   "zeal." ABA Model Rule of Professional Conduct 1.3 & cmt. [1].

28

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

2. **The PSLRA's Heightened Pleading Standards Require Plaintiffs and Their Counsel to Seek Internal Documents and Testimonial Evidence.**

The right and duty to conduct informal factual investigations have special significance for plaintiffs and their counsel in the federal securities law context because independent investigations are often the *only* means by which they can gather the documentary and testimonial evidence necessary to meet the stringent pleading standards of the PSLRA. *See In re Ashanti Goldfields Secs. Litig.*, 184 F.Supp.2d 247, 258 (E.D.N.Y. 2002) ("[H]eightened pleading requirements often put plaintiffs in a Catch-22 in securities fraud cases. Many plaintiffs do not have access to internal documents of the entities against which they wish to file claims, but those documents are the best way to demonstrate the alleged fraud. In effect, the heightened pleading requirement in many cases prevents plaintiffs from conducting the discovery they need to meet the requirement.").

The PSLRA "significantly altered" the pleading standard for private litigants by requiring that a complaint plead both falsity and scienter with particularity. *Zucco Partners v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009). To satisfy these heightened standards, a complaint must "specify each statement alleged to have been misleading, the reason or reasons why it is misleading, and, if an allegation regarding a statement or omission is made on information and belief, . . . state with particularity all facts on which the belief is formed." *Id.* (quoting 15 U.S.C. § 78u-4(b)(1)).

Additionally, the complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind, or scienter." *Zucco, supra,* 552. F.3d at 990. (quoting 15 U.S.C. § 78u-4(b)(2) (internal quotation marks omitted)). Congress' intent in using this "strong inference" language was "to raise the pleading standard even beyond the most stringent existing standard." *Silicon Graphics, supra,* 183 F.3d at 979. Thus, as the Supreme Court made clear in *Tellabs*, under this standard, it is insufficient for plaintiffs merely to "provide a factual basis for their scienter allegations, *i.e.*, to allege facts from which an inference of scienter rationally *could* be drawn. *Tellabs, supra,* 127 S.Ct. at 2510. Instead, Congress required plaintiffs to plead with particularity facts that give rise to a 'strong' – *i.e.*, a powerful or

1   cogent – inference." *Id.* (internal citations and alterations omitted).

2       Some Courts in this Circuit have required federal securities plaintiffs to support their

3   allegations with indications of actual evidence, *such as confidential witness statements and, in*

4   *particular, internal company documents*. In *Silicon Graphics*, the Ninth Circuit's first decision

5   interpreting the PSLRA, the Court held that allegations of scienter in a securities fraud complaint

6   failed to satisfy either the particularity or the strong inference requirements of the PSLRA where

7   no specifics were provided as to the contents, authors, or recipients of internal reports that

8   purportedly contradicted defendants' positive public statements, or of the sources who had

9   informed plaintiff about the existence of such reports. *Silicon Graphics, supra,* 183 F.3d at 984-

10  985. In its analysis, the *Silicon Graphics* Court expressly rejected as insufficient the prior practice

11  of securities fraud plaintiffs in bringing claims based on unsubstantiated "boilerplate allegations"

12  about "negative internal reports" that they expected to confirm through discovery, and concluded

13  that "a proper complaint which purports to rely on the existence of internal reports [must] contain

14  at least some specifics from those reports as well as such facts as may indicate their reliability."

15  *Id.* As such, *Silicon Graphics* and its progeny make clear that Courts expect securities plaintiffs to

16  procure some evidence, in the form of witness statements or, preferably, internal documents, that

17  strongly suggests fraud before commencing discovery.

18      *Silicon Graphics* is not unique; dozens of courts have implicitly approved plaintiffs

19  contacting and obtaining documents from former employees of the defendant company. *See, e.g.,*

20  *In re Stone & Webster, Inc., Secs. Litig.*, 414 F.3d 187, 210-11 (1st Cir. 2005) (upholding claims

21  based on allegations referencing "comprehensive internal financial reports of the Company's

22  current condition" which reflected that accounts payable were hundreds of days overdue and

23  contradicted positive public statements about company's liquidity and financial condition);

24  *Nursing Home Pension Fund, Local 144*, 380 F.3d at 1233-34 (noting that securities complaint

25  "very importantly" referenced internal revenue accounting records that appeared to establish

26  improper revenue adjustments in reversing district court's grant of motion to dismiss); *In re Daou*

27  *Sys., Inc. Secs. Litig.*, 411 F.3d 1006, 1015 (9th Cir. 2005) (where complaint relies solely on

28  confidential witnesses, more particularity is required in description of confidential witnesses than

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

1   if complaint were also supported by documentary evidence providing an adequate basis for

2   believing defendants' statements were false); *No. 84 Employer-Teamster Joint Council Pension*

3   *Trust Fund v. Am. West Holding Corp.*, 320 F.3d 920, 933 (9th Cir. 2003) (complaint satisfied

4   heightened pleading requirements in part based on citations to internal email messages between

5   FAA employees discussing maintenance issues at America West); *Lipton v. Pathogenesis Corp.*,

6   284 F.3d 1027, 1036 (9th Cir. 2002) (plaintiffs failed to meet PSLRA pleading standards where

7   they "merely assert[ed] in conclusory terms that the defendants had access to internal data

8   demonstrating a decline in sales . . . [and did] not identify any internal reports of 'sales data,'

9   much less plead, in any detail, the contents of any such report or the purported data"); *In re*

10  *Vantive Corp. Secs. Litig.*, 283 F.3d 1079, 1087-88 (9th Cir. 2002) (finding allegations of scienter

11  based, in part, on internal finance reports to be deficient because plaintiffs "failed to cite to any

12  specific report, to mention any dates or contents of reports, or to allege their sources of

13  information about any reports"); *In re Miva, Inc., Secs. Litig.*, 511 F. Supp. 2d 1242, 1258 (M.D.

14  Fla. 2007) (finding allegations of falsity based on statements by former employees and

15  "anonymous reports given to Plaintiffs' lead counsel, and an internal FindWhat report" to be

16  sufficient).

17      It is clear from these cases that the confidential witnesses referred to include former

18  employees of the defendant company and that the internal documents referred to are internal

19  documents of the defendant company.  While in none of these cases (both 9th Circuit and

20  elsewhere) is there any indication that the defendant challenged the plaintiffs' contact of the

21  former employees and the use of the defendant company's documents in the complaint, the

22  obvious inference from these cases is that the plaintiffs obtained the internal company documents

23  from the former employees with whom they spoke.  In the vast majority of cases, how else could

24  they get them?  Therefore, the judicial recognition of this practice without any hint of disapproval

25  is strong evidence that this practice is not *per se* wrong.

26      Defendants here claim that more is involved, *e.g.* Ms. Robinson stole documents at

27  Plaintiffs' encouragement and that Plaintiffs bought the stolen documents.  Defendants make other

28  assertions that also lack any factual support.  As will be demonstrated at the hearing in this matter,

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

1    these allegations have no basis in fact.

2    **B.   In Conducting Their Required Inquiry, Plaintiffs and Their Counsel Behaved Lawfully and Appropriately In Interviewing Former Employees and Gathering Public and Non-Public Documents.**

4    Defendants argue that Plaintiffs acted wrongfully because they accepted documents from

5    an ex-employee who signed a Confidentiality Agreement, may or may not have signed a statement

6    upon terminating her employment certifying that she had returned all documents covered by the

7    confidentiality agreement, and later breached that agreement by supplying documents allegedly

8    covered by it to plaintiffs.[1]  According to Defendants, it does not matter whether or not Plaintiffs

9    knew of the Confidentiality Agreement, encouraged its breach, or took precautions to avoid

10    receiving privileged documents.  However, "where the party receiving the evidence was not

11    involved in any wrongful conduct in securing it, and where the evidence itself is not privileged,

12    there is no basis for requiring the return of the information obtained or prohibiting its use."

13    *Madanes v. Madanes*, 186 F.R.D. 279, 292-93 (S.D.N.Y. 1999).  This is true even if the third

14    party was in fact breaching a confidentiality agreement or otherwise behaving improperly in

15    obtaining and/or providing the documents to the litigant.  *Schlaifer Nance & Co. v. Estate of*

16    *Warhol*, 742 F.Supp. 165, 166 (S.D.N.Y. 1990) (third party's independent decision to violate

17    settlement agreement in providing documents to defendant did not preclude defendant from their

18    use where defendant was not a party to agreement and not bound by its terms).[2]

---

[1] The Court stated in its June 11, 2009 order (p .6): "When she terminated her employment, Robinson signed a statement that she had returned all documents to REMEC."  But this statement was signed by Ms. Robinson on June 28, 2004, the first day of her employment.  Defendants provide no evidence that she signed such a statement upon termination.

[2] *See also Shanahan, supra*, 2006 WL 3317018, *1-*2 (even if ex-employee behaved improperly in sharing privileged document received during course of his employment with co-defendants, this was insufficient to support use of court's equitable powers to prevent co-defendants' use of document against parties other than the ex-employer who held the privilege); *George v. Indus. Maint. Corp.*, 305 F. Supp. 2d 537, 539-43 (D. V.I. 2002) (no sanctions warranted where defendant asserted that documents received by plaintiff's counsel from third party were proprietary and stolen from secure location on defendant's premises because defendant's "conjecture" that documents were procured by ex-employee who happened to be counsel's present client "does not rise to the level of establishing wrongdoing on the part of this plaintiff and his counsel"; plaintiff permitted to continue use of any non-privileged materials so obtained except specific salary information that implicated privacy interests of non-parties); *Josephson v. Marshall*, 2001 WL 815517, at *1-*4 (S.D.N.Y. July 19, 2001) (no basis for precluding plaintiff's use of non-privileged documents despite defendant's assertions that former employee improperly removed the documents from her home and disclosed them to plaintiff where there was no proof that plaintiff herself had was involved in any wrongdoing in securing them).

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

1    In determining whether to exercise its inherent authority to protect the integrity of the

2  judicial system to preclude a party from exploiting evidence that he or she is alleged to have

3  obtained through improper means (let alone the more drastic sanctions sought such as dismissing

4  plaintiffs' case), the Court must draw "a necessary distinction between a party that actively

5  secures evidence that she is not entitled to and one that passively receives evidence from a

6  questionable source." *Madanes, supra*, 186 F.R.D. at 293.  The rationale behind this distinction is

7  that there is no cause for sanctioning the "blameless" recipient for the wrongdoing of another, or

8  for depriving him or her of the use of any information he or she would otherwise be entitled to

9  receive through discovery – *i.e.*, information that is neither privileged nor proprietary, nor

10  implicates privacy interests of third parties.  *Id.*

11    In this case, the evidence suggests Ms. Robinson acquired the documents lawfully in the

12  course of her employment at Remec, kept them for reasons having nothing to do with this

13  litigation, and thereafter provided them voluntarily to Plaintiffs' investigators.  Plaintiffs are not

14  themselves parties to the Confidentiality Agreement that Defendants claim has been breached, and

15  are therefore not bound by its terms.  There is also no evidence to support Defendants' assertion

16  that Plaintiffs, their counsel, or investigators deliberately induced Ms. Robinson to breach her

17  Confidentiality Agreement (if she did indeed breach it) or to do anything else improper in assisting

18  them in this matter.  Indeed, the evidence presented at the hearing will show the opposite.

19  Contrary to Defendants' insinuations, the mere fact that the recipient knew or should have known

20  that the third-party provider of the documents is bound by a confidentiality agreement that may

21  limit the disclosure of certain documents does not in itself automatically render the recipient

22  complicit in, and liable for, the provider's breach of the same.  *Schlaifer Nance & Co., supra*, at

23  166 (passive recipient's discovery that third party breached confidentiality agreement in providing

24  documents, without more, was insufficient to bar it from using documents); *cf. Conmar Prods.*

25  *Corp. v. Universal Slide Fastener Co.,* 172 F.2d 150, 156-57 (2nd Cir. 1949) (even assuming

26  recipients actually induced ex-employee to reveal trade secrets in breach of confidentiality

27  agreement with former employer, where they did so in ignorance, "they were entitled to exploit

28  [the secrets] till they learned that they had induced the breach of the contract").

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

1    In contrast, all of the cases cited in this Court's Order of June 11, 2009 fall into the other

2    category of cases where the sanctioned individual, whether it was the party or his or her counsel,

3    was directly engaged in wrongdoing in the procurement of the documents, and are therefore

4    distinguishable from the facts here. *See, e.g., Jackson v. Microsoft Corp.*, 211 F.R.D. 423, 431-32

5    (W.D. Wash. 2002) (exercise of Court's inherent authority to dismiss action merited where

6    plaintiff himself paid unidentified source for documents stolen from defendant with information

7    that was privileged, proprietary and/or implicated third-party privacy interests and continued to

8    engage in misconduct by telling "elaborate series of lies" to court and defendant regarding his

9    possession of same); *Perna v. Electronic Data Sys. Corp.*, 916 F.Supp. 388 (D.N.J. 1995) (action

10   dismissed where plaintiff himself copied documents from defense counsel's briefcase during lunch

11   break knowing that this was inappropriate).

12       *Rico v. Mitsubishi* is likewise factually distinguishable from the instant case. *Rico v.*

13   *Mitsubishi,* 42 Cal.4th 807, 819 (Cal. 2007).  In *Rico*, the Court held disqualification of counsel

14   was proper where counsel came into inadvertent possession of an obviously privileged document

15   and violated ethics rules by failing to notify its opponent and by using the document against him to

16   gain an undue advantage.  These are not the circumstances here.  And in any event, the standards

17   for attorney conduct set forth by the California Supreme Court in *Rico* are inapplicable to these

18   federal proceedings.  Only one federal court has ever cited *Rico*, and in so doing, it specifically

19   questioned the propriety of applying *Rico* in the federal context.  The court noted the absence of

20   authority "suggesting that, in such a case, a federal court would not apply federal law in its

21   decisions regarding the discipline of attorneys appearing before it." *E-Smart Techs., Inc. v.*

22   *Drizin*, 2009 WL 35228, at *7 & n.3 (N.D. Cal. Jan. 6, 2009).[3]

---

[3] It is also worth noting that the *Rico* standards were drawn from *State Compensation Insurance Fund v. WPS Inc.*, 70 Cal. App. 4th 644 (Cal. Ct. App. 1999), which, in turn, was based on ABA Formal Opinion 94-382.  In 2006, however, ABA Formal Opinion 06-440 withdrew Formal Opinion 94-382 in its entirety, recognizing that Model Rule of Professional Conduct 4.4(b), enacted in 2002, requires only that counsel receiving inadvertently produced materials notify the sender.  Formal Opinion 06-440 further makes clear that if the material was sent intentionally but without authorization, Rule 4.4(b) does not apply at all because the transmission cannot then be considered inadvertent.

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

1    Nothing in the ethical canons changes this analysis.  Rule 4.4.(a) of the ABA Model Rules

2  of Professional Conduct prohibits a lawyer from obtaining evidence in violation of the rights of a

3  third party, and Rule 4.4(b) requires that a lawyer promptly notify the sender of a document if they

4  know or reasonably should know that the document was inadvertently sent.  The evidence adduced

5  at the hearing will establish that neither of these ethical rules were breached by Plaintiffs' counsel

6  here.

7    Plaintiffs' counsel and investigators took numerous precautions before reviewing the

8  documents provided by Ms. Robinson and reasonably believed that the documents received were

9  not taken in violation of Defendants' rights.  There was no indication that the documents were

10  privileged, as is discussed in greater detail below.  Moreover, Plaintiffs promptly disclosed that

11  they obtained around 60,000 pages of "internal Company documents" from witnesses, describing

12  some of these documents in detail in the *Ex Parte* Application they filed on April 13, 2006 seeking

13  leave to amend their Third Amended Complaint.  (Lead Plaintiff's *Ex Parte* App. at 1:9-10, 17-19;

14  2:23-24; 3:22-4:14; 4:26-5:4.)  Despite being put on notice that Plaintiffs' counsel had possession

15  of internal company documents back in April of 2006, Defendants took no action whatsoever until

16  filing the instant motion for terminating sanctions, even after they saw specific references to

17  internal documents in the Ex Parte Application and the Fourth Amended Complaint.[4]

18    Accordingly, the evidence will continue to show that there is no cause under any legal or

19  ethical standard for sanctioning Plaintiffs and their counsel for accepting documents from Ms.

20  Robinson.

21  ///

22  ///

23  ///

24  ///

25

26  _____

[4] To the extent Defendants now assert that some of these documents may be privileged, they failed to either establish a

27  privilege or take reasonable steps to seek return of any alleged privileged documents, as required by F.R.E. 502(3) and F.R.C.P.
26(b)(5)(B).

28

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California  92101-8700

**C.    It is Contrary to Public Policy to Permit Defendants to Use "Confidentiality" Agreements to Mask Securities Fraud, Particularly Where There Are No Legitimate Competitive Interests to Protect.**

Not only is it erroneous for Defendants to assert that Plaintiffs and their counsel can be sanctioned based on Ms. Robinson's alleged breach of a confidentiality agreement where they were neither bound by that Agreement nor responsible for its breach, but Defendants may not enforce the confidentiality agreement where it serves no legitimate purpose, and their only goal is to conceal their own securities fraud. As the Court in *In re JDS Uniphase Corporation Securities Litigation* stated, "[d]isclosures of wrongdoing do not constitute revelations of trade secrets which can be prohibited by agreements binding on former employees." *JDS Uniphase, supra*, at 1136 (quoting *McGrane, supra*, at 1052; *see also Chambers v. Capital Cities/ABC*, 159 F.R.D. 441, 444 (S.D.N.Y. 1995) ("it is against public policy for parties to agree not to reveal, at least in the limited contexts of depositions or pre-deposition interviews concerning litigation arising under federal law, facts relating to alleged or potential violations of such law").

In *JDS Uniphase*, another federal securities case, the defendants sought to prevent plaintiffs from interviewing former employees based on confidentiality agreements with almost identical language to the agreement at issue here.[5] Rejecting defendants' argument, the Court ruled that former employees could speak to plaintiffs' investigators so long as they did not disclose any information protected by the attorney-client privilege, trade secrets or other confidential business methods used by the employer. *JDS Uniphase, supra,* at 1139. The Court reasoned that Congress had indicated a public policy in favor of whistleblowers in securities cases and concluded that the defendants "cannot use its confidentiality agreements to chill former employees from voluntarily participating in legitimate investigations into alleged wrongdoing." *Id.* at 1136, 1137; *see also In re Flir Systems, Inc. Sec. Litig.*, 2000 WL 33201904, at *3 (D. Or. Dec. 13, 2000) (confidentiality agreement did not prevent a former employee from speaking to

---

[5] See Exhibit 2 hereto, which compares the Confidentiality Agreement at issue in *JDS Unified* with the Remec Confidentiality Agreement under consideration here.

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

1  plaintiffs' counsel, and stating that "[t]he PSLRA is a shield intended to protect security-fraud

2  defendants from costly discovery requirements, not to be a sword with which defendants can

3  destroy the plaintiffs' ability to obtain information from third parties who are otherwise willing to

4  disclose it," *citing SG Cowen Sec. v. U.S. District Court for the Northern Dist. of Cal.*, 189 F.3d

5  909, 911 (9th Cir. 1999)).

6       A recent case challenging the constitutionality of the federal anti-terrorist warrantless

7  surveillance program also illustrates the substantial public policy considerations supporting the

8  propriety of Plaintiffs' actions here.  In *Hepting v. AT & T Corp.*, 439 F.Supp.2d 974 (N.D. Cal.

9  2006), plaintiffs filed a motion for preliminary injunction based in part on documents obtained

10  from a former AT&T employee, which plaintiffs argued showed how AT&T implemented a

11  warrantless surveillance system on behalf of the federal government.  *Id.* at 979.  AT&T moved to

12  compel the return of the documents, claiming that the former employee breached a confidentiality

13  agreement by providing proprietary and confidential documents to the plaintiffs.  Notwithstanding

14  AT&T's challenge, Chief Judge Walker denied AT&T's motion in a Minute Order dated May 17,

15  2006.  Exhibit 3, attached.

16       Even though Courts may bar litigants from using documents that are privileged, trade

17  secrets or contain information implicating privacy interests, irrespective of whether they were

18  innocently obtained, as is the case with ex parte contacts with former employees, the burden is on

19  the party claiming the need for such restrictions, Defendants here, to affirmatively establish that a

20  particular document falls into one or more of those categories.  "[B]road allegations of harm,

21  unsubstantiated by specific examples [such as those made by Defendants here] will not suffice."

22  *George*, *supra*, 305 F.Supp.2d at 541; *see also Madanes*, *supra*, 186 F.R.D. at 293 (rejecting

23  notion that any material obtained by attorney during course of representing client as distinct from

24  attorney-client communications was covered by privilege, and conducting individual assessment

25  of each document specifically identified as privileged).  This Defendants have never even

26

27

28

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

1  attempted to do, despite having had copies of the documents since Plaintiffs produced them in

2  March 2007[6].

3  **D.   Plaintiffs' Counsel Properly Compensated Ms. Robinson For Time Spent In Connection With This Litigation.**

4

5  Defendants insinuate in their Motion for Sanctions that Plaintiffs' counsel paid Ms.

6  Robinson to steal the documents.  The evidence, however, will show that Plaintiffs did not pay

7  Ms. Robinson for the documents themselves, but rather, paid Ms. Robinson the limited and

8  reasonable sum of $1,500 for the ten hours she spent reviewing the documents to ensure that they

9  did not contain sensitive materials.  This compensation for time spent was legal and appropriate.

10  *See, e.g.,* ABA Formal Opinion 96-402 (1996) (a party may compensate a witness for time spent

11  preparing to testify, as long as it is made clear to the witness that the payment is not being made

12  for the substance or efficacy of the witness' testimony); *Hamilton v. Gen. Motors Corp.*, 490 F.2d

13  223, 229 (7th Cir. 1973) (although the kinds and amounts of reimbursement that non-expert

14  witnesses can receive are circumscribed, reimbursement for reasonable expenses incurred and

15  reasonable value of time spent in preparing for and testifying in litigation is allowed); *Prasad v.*

16  *MML Investors*, 2004 U.S. Dist. LEXIS 9289, *16 (S.D.N.Y. May 24, 2004) (federal courts are

17  "generally in agreement that a witness may properly receive payment related to the witness'

18  expenses and reimbursement for time lost associated with the litigation"); *State of New York v.*

19  *Solvent Chem. Co.*, 166 F.R.D. 284, 289 (W.D.N.Y. 1996) ("[T]he court finds nothing improper in

20  the reimbursement of expenses incurred by [the witness] in travelling . . . to provide [a party] with

21  factual information, or in the payment of a reasonable hourly fee for [his] time").

22

23

24

---

25  [6]  As discussed above, Plaintiffs' counsel did not violate Defendants' rights under Model Rule 4.4(a) by accepting documents from a former employee.  This includes rights Defendants claim they have under the Confidentiality Agreement signed

26  by Ms. Robinson, since Defendants have yet to point to any documents that are legitimately protected by the Agreement, and are rather just wielding the Agreement as an overbroad shield to conceal their fraud in precisely the fashion proscribed by *JDS*

27  *Uniphase* and other related authorities.

28

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

15

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

**III.   DEFENDANTS HAVE NO EVIDENCE TO SUPPORT THEIR INVOCATION OF THE COURT'S INHERENT AUTHORITY**

The Court has the inherent authority to impose sanctions, but "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers v. NASCO, Inc.* 501 U.S. 32, 44 (1991); *see Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980) ("Because inherent powers are shielded from direct democratic controls, they must be exercised with restraint and discretion."). Accordingly, any award of sanctions under the Court's inherent authority is subject to very strict procedural safeguards. *Chambers, supra,* at 50 ("A court must, of course, exercise caution in invoking its inherent power, and it must comply with the mandates of due process, both in determining that the requisite bad faith exists and in assessing fines.") As is already evident from their papers, and as the hearing will conclusively demonstrate, Defendants do not have any evidence to support their claims that Plaintiffs and their counsel behaved inappropriately, let alone evidence sufficient to surmount these strict procedural safeguards and justify the Court's use of its inherent authority to terminate the case.

**A.   An Award of Inherent Authority Sanctions Can Only Be Made Upon a Specific Finding of Bad Faith.**

The Court cannot impose sanctions under its inherent powers unless it makes a specific finding that Plaintiffs or their counsel acted in bad faith. *Chambers, supra,* at 46-47; *see also Leon v. IDX Sys. Corp.*, 464 F.3d 951, 961 (9th Cir. 2006); *Erum v. County of Kauai*, No. 08-cv-00113, 2008 U.S. Dist. LEXIS 52272 (D. Haw. June 30, 2008). This requirement insures that an attorney is not punished for advocacy, unintentional mistakes or the conduct of another. *Primus Auto. Fin. Servs. v. Batarse*, 115 F.3d 644, 649 (9th Cir. 1997) (reversing sanctions against attorney who persisted in advancing a completely meritless argument because there was no evidence that the attorney acted in bad faith). As the Ninth Circuit stated in *Primus*, "We insist on the finding of bad faith because it insures that restraint is properly exercised and it preserves a balance between protecting the court's integrity and encouraging meritorious arguments." *Id.* Accordingly, the Court may not sanction conduct based on merely negligent or even reckless conduct under its inherent powers. *In Re Keegan Mgmt. Co. Sec. Litig.*, 78 F.3d 431, 436 (9th Cir.

1  1996) (reversing sanctions awarded without a finding of bad faith, stating "precedents plainly

2  require" more than a finding of recklessness).

3  **B.    A Heightened Burden of Proof is Appropriate for Inherent Authority Sanctions.**

4

5       The Ninth Circuit has not made a specific finding regarding the moving party's burden of

6  proof before the Court exercises its inherent sanction power; however it has cautioned that "[the]

7  more punitive the nature of the sanction, the greater the protection to which an individual is

8  entitled." *F.J. Hanshaw Enters., Inc., v. Emerald River Dev., Inc.*, 244 F.3d 1128, 1137 (9th Cir.

9  2001).  The Ninth Circuit has held that the highest level of due process must be satisfied before a

10  court may impose a sanction that is punitive, rather than compensatory, in nature.  *Macias v.*

11  *McGrath*, 439 F.3d 1141 (9th Cir. 2006) (reversing sanction of $1,500 fine and referral to State

12  Bar, holding that heightened due process procedures were required); *Hanshaw, supra*, at 1138

13  ($500,000 fine for attempted bribery of court-appointed receiver was punitive; sanction reversed

14  for lack of due process, including presumption of innocence and proof beyond a reasonable

15  doubt).

16       Other Courts of Appeal reaching this issue have repeatedly required a finding of bad faith

17  by *clear and convincing evidence*.  The rationale is that sanctions imposed under the court's

18  inherent power are punitive in nature and are based on allegations of fraud or other quasi-criminal

19  wrongdoing.  Reflecting these factors, numerous federal courts have required a heightened

20  standard of proof: clear and convincing evidence of the abusive conduct is required; a mere

21  preponderance of evidence is not enough.[7]

22

23   [7]  *See Shepherd v. American Broad. Co., Inc.*, 62 F.3d 1469, 1476-75 (D.C. Cir. 1995) ("[a] heightened standard of proof
is particularly appropriate because most inherent power sanctions ... are fundamentally punitive"); *Aoude v. Mobil Oil Corp.*, 892

24  F.2d 1115, 1118 (1st Cir. 1989) ('fraud on the court' must be proven "clearly and convincingly"); *Oliveri v. Thompson*, 803 F.2d
1265, 1272 (2d Cir. 1986) (court requires "clear evidence" and a "high degree of specificity in the factual findings" before

25  imposing attorneys' fees under inherent powers); *Quantum Communic'ns. Corp. v. Star Broad. Inc.*, 473 F. Supp. 2d 1249, 1269
(S.D. Fla., 2007) (preponderance of the evidence is not sufficient for entry of default under court's inherent powers); *Balcar v. Bell

26  and Assocs. LLC*, 295 F. Supp. 2d 635, 640 (N.D. W. Va. 2003) ("Although the Fourth Circuit appears not to have addressed the
issue, this Court believes it, too, would adopt the clear and convincing evidence standard with regard to the Court's inherent power
to sanction."); *Scholastic Inc. v. Stouffer*, 221 F. Supp. 2d 425, 439 (S.D.N.Y. 2002); *see also Maynard v. Nygren*, 332 F.3d 462,

27  468 (7th Cir. 2003) (applying clear and convincing evidence standard to Rule 37 dismissal based on bad faith); *Chaves v. M/V
Medina Star*, 47 F.3d 153, 156 (5th Cir. 1995) ("the threshold for use of the inherent power sanctions is high").

28

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

1   Thus, although the Ninth Circuit has not specified which burden of proof applies, this

2   Court should require clear and convincing evidence of misconduct in ruling on defendants'

3   sanction motion.

4   **C.   This Case Does Not Present the Extreme Circumstances of Willfulness or Bad Faith Required to Justify Terminating Sanctions.**

5

6   Dismissal is the most harsh and punitive of all sanctions, and is justified only "in ***extreme***

7   ***circumstances***, in response to abusive litigation practices, and to insure the orderly administration

8   of justice and the integrity of the court's orders." *Halaco Eng'g Co. v. Costle,* 843 F.2d 376, 380

9   (9th Cir. 1988) (emphasis added and internal citations omitted); *In re Exxon Valdez* 102 F.3d 429,

10   432 (9th Cir. 1996) (dismissal appropriate only in "extreme circumstances"); *FDIC v. Conner* 20

11   F.3d 1376, 1380 (5th Cir. 1994) (dismissal is a "remedy of last resort").

12   In ruling on a motion for terminating sanctions, a "district court must determine (1) the

13   existence of certain extraordinary circumstances, (2) the presence of willfulness, bad faith, or fault

14   by the offending party, (3) the efficacy of lesser sanctions, (4) the relationship or nexus between

15   the misconduct drawing the dismissal sanction and the matters in controversy in the case, and

16   finally, as optional considerations where appropriate, (5) the prejudice to the party victim of the

17   misconduct, and (6) the government interests at stake." *Halaco, supra,* at 380.  Therefore, to

18   justify the ultimate sanction of dismissal, the court must provide a specific, reasoned explanation

19   for rejecting lesser sanctions such as fines, attorney fees or adverse evidentiary rulings. *Halaco,*

20   *supra,* at 381; *Shepherd, supra,* at 1478-1479.

21   The evidence presented at the hearing on this matter will show that each of these factors

22   weigh in favor of denying the instant motion.  Plaintiffs and their counsel did not engage in

23   wrongful conduct during their required investigation in this matter, but rather engaged in the

24   routine and lawful gathering of witnesses and documents to support their claims.  Defendants will

25   not be able to establish that Plaintiffs or their counsel acted in bad faith, and in fact the opposite is

26   true.  Plaintiffs' counsel disclosed the documents to the Court and Defendants long ago and took

27   every measure to ensure that its conduct was ethical and that the documents at issue did not

28

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

1   contain privileged information.  Terminating sanctions are a drastic remedy that should not be

2   imposed under these circumstances.

3   **IV.   CONCLUSION**

4         Plaintiffs and their counsel did not engage in any misconduct, and certainly not conduct of

5   the kind that would justify the extraordinary remedy of dismissal or any other sanctions.  First, as

6   shown above, law and prudence required Plaintiffs and their counsel to investigate the facts of this

7   securities fraud complaint outside of the formal discovery process, including the near requirement

8   to interview former employees and obtain documentary evidence of wrongdoing.  Second, there is

9   no evidence of willful misconduct or bad faith.  Third, if there was  any need to protect

10  Defendants' rights under the confidentiality agreement, a lesser order could have been imposed

11  had defendants acted timely.  Fourth, there is no causal nexus between the claimed misconduct

12  and Defendants' underlying securities fraud.  Five, Defendants would not be prejudiced; facing

13  potential liability for their own wrongdoing is not prejudice resulting from the alleged misconduct.

14  And finally, public policy favors the enforcement of the anti-fraud provisions of the federal

15  securities laws and abhors concealment of fraud.  Accordingly, there is no basis for any sanctions,

16  let alone terminating sanctions here.

17

18  DATED: July 17, 2009                     Respectfully submitted,

19                                           KIRBY NOONAN LANCE & HOGE LLP

20

21                                           By:   /s/ David J. Noonan
                                                   _____
22                                                 David J. Noonan
                                                   Attorneys for Plaintiffs

23

24

25

26

27

28

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

**TABLE OF CONTENTS FOR EXHIBITS SUBMITTED IN SUPPORT OF**

**PLAINTIFFS' SUPPLEMENTAL BRIEF**

**IN OPPOSITION OF DEFENDANTS' MOTION FOR SANCTIONS**

| Exhibit No. | Title and/or Description | Page Numbers |
|---|---|---|
| Exhibit 1 | Lead Plaintiff's Ex-Parte Application for Leave to Amend Complaint | 00001 - 00021 |
| Exhibit 2 | Comparison of Confidentiality Agreements | 00022 - 00023 |
| Exhibit 3 | Civil Minute Order | 00024 - 00025 |

**Exhibit 1**

1  MILBERG WEISS BERSHAD
     & SCHULMAN LLP
2  JEFF S. WESTERMAN (SBN 94559)
   KAREN T. ROGERS (SBN 185465)
3  RAMON M. GONZALEZ (SBN 220891)
   355 S. Grand Avenue, Suite 4170
4  Los Angeles, CA 90071
   Telephone: (213) 617-1200
5  Facsimile:  (213) 617-1975

6  Lead Counsel for Plaintiff

7  [Additional Counsel Appear on Signature Page]

8

9

10          UNITED STATES DISTRICT COURT

11        SOUTHERN DISTRICT OF CALIFORNIA

12

13  IN RE:  REMEC INCORPORATED   )  CASE NO. 04 CV 1948 JM (AJB)
   SECURITIES LITIGATION        )
14                           )  CLASS ACTION
                            )
15  This Document Relates to:       )
                            )  LEAD PLAINTIFF'S *EX PARTE*
16          ALL ACTIONS   )  APPLICATION FOR LEAVE TO AMEND
                            )  COMPLAINT
17                            )  [UNOPPOSED AS TO RELIEF SOUGHT]
                            )
18                            )

19

20

21

22

23

24

25

26

27

28

FILED

2006 APR 13  PM 4:06

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY _____ DEPUTY

BY FAX



LEAD PLAINTIFF'S *EX PARTE* APPLICATION FOR LEAVE TO AMEND COMPLAINT
[UNOPPOSED AS TO RELIEF SOUGHT]

DOCS\354464v1

**Exhibit 1**
**00001**

## I.    INTRODUCTION

Lead Plaintiff hereby respectfully requests that the Court grant his *ex parte* application for leave to amend the Third Amended Complaint, filed March 23, 2006, and that the Court grant Lead Plaintiff until May 4, 2006 to file the amended pleading.  Plaintiffs' Lead Counsel conferred with defense counsel about this motion before filing and, while defendants do not join in any of the representations in this motion and preserve all rights to challenge any amended complaint, defendants do not oppose the request for leave to amend or the proposed schedule.

Plaintiffs represent that an amendment is appropriate and necessary because of newly obtained information.  Plaintiffs' Lead Counsel through their ongoing investigative efforts obtained additional documents, including approximately 50,000 pages of internal Company documents that were made available on March 21, 2006, only two days before Lead Plaintiff's Third Amended Complaint needed to be filed.  Plaintiff's Lead Counsel did not seek an extension of time to file the Third Amended Complaint at that time because it was so close to the Court-ordered deadline to file, and it was unclear whether and to what extent the documents would be relevant and material to Lead Plaintiff's case.  However, an initial review of these documents reveal them to be relevant and significant to Lead Plaintiff's claims because they support allegations and corroborate information provided by the confidential witnesses.  In addition, approximately 10,000 more documents were made available to Lead Counsel between April 3 and 7, 2006, after the Third Amended Complaint was filed, which further support Lead Plaintiff's claims.  Lead Plaintiff therefore requests three weeks to amend in order to allow Lead Counsel and their consultants to analyze them and incorporate relevant facts into the Third Amended Complaint.

The relief sought will not prejudice defendants because defendants have not yet filed their anticipated Motion to Dismiss, which is currently due on Friday, April 21, 2006 pursuant to the parties' Joint Stipulation Re Briefing Schedule, entered on March 16, 2006.  Permitting plaintiffs to amend now, before a motion to dismiss the Third Amended Complaint is briefed by the parties and worked up by the Court, will be more efficient use of the parties' and judicial resources.  Should this motion be denied at this time, Lead Plaintiff believes the new information is sufficient to warrant

LEAD PLAINTIFF'S *EX PARTE* APPLICATION
FOR LEAVE TO AMEND COMPLAINT
[UNOPPOSED AS TO RELIEF SOUGHT]
DOCS\354464v1

- 1 -

CASE NO. 04 CV 1948 JM (AJB)

**Exhibit 1**
**00002**

1   leave to amend should the Third Amended Complaint be dismissed as a result of defendants' motion

2   to dismiss.

3        Lead Plaintiff seeks *ex parte* relief because there is insufficient time to file a regularly

4   scheduled motion on this issue given that defendants' response is due in eight days, on April 21,

5   2006. *See* Declaration of Karen T. Rogers in Support of Plaintiff's *Ex Parte* Application for Leave

6   to Amend Complaint ("Rogers Decl."), ¶7. On April 12, 2006, plaintiffs' Lead Counsel informed

7   defendants' counsel that this *ex parte* motion would be filed. Defendants' counsel advised Lead

8   Counsel that defendants do not oppose the filing of this application. *See Id.,* ¶6.

9   **II.     MEMORANDUM OF POINTS AND AUTHORITIES**

10       On March 8, 2006, pursuant to the parties' stipulation, the Court granted Lead Plaintiff an

11  extension of approximately two weeks to file his Third Amended Complaint until March 23, 2006.

12  The extension was sought due to personnel changes and work conflicts of plaintiffs' Lead Counsel

13  responsible for drafting the Third Amended Complaint. Lead Plaintiff timely filed his Third

14  Amended Complaint but now respectfully seeks further leave to amend due to the emergence of a

15  substantial number of relevant documents obtained by plaintiffs' counsel (some immediately before

16  and some after the filing of that Complaint), that further substantiate plaintiffs' allegations, and

17  provide additional detail to meet the issues raised in the Court's prior rulings on the pleadings and

18  the pleading standard set forth in the PSLRA.

19       Since the Court issued its Order Granting Motion to Dismiss [and] Leave to Amend (the

20  "Order") on February 15, 2006, plaintiffs' Lead Counsel diligently continued their investigation

21  efforts to obtain and provide further detail and corroboration for the allegations in the Complaint.

22  This effort is hampered by the PSLRA's mandated discovery stay which precludes formal discovery

23  at this stage. As a result of such diligence and perseverance, however, witnesses recently provided

24  plaintiffs' Lead Counsel with more than 60,000 pages of documents. *See* Rogers Decl., ¶3. Because

25  it is taking take time to thoroughly review and analyze these documents, and assistance from

26  forensic accountants and other consultants has been required to review and interpret them, and

27

28

1  additional time is needed to incorporate facts from these documents into the Complaint, three weeks'

2  leave to amend is the bare minimum and reasonable. *Id.* ¶3-4.

3      As the Court acknowledged in its Order, in light of the heightened pleading standards under

4  the PSLRA, the "'drafting of a cognizable complaint can be a matter of trial and error.'" *See* Order,

5  at 18 (citation omitted).   Further, the Court recognized that there is no bright-line rule for

6  determining when an inference of deliberate recklessness is sufficiently strong. *Id.*  In order to plead

7  a sufficiently strong inference of scienter in the Complaint, and in light of the Court's admonition in

8  its Order that Lead Plaintiff had "one last opportunity to state a claim that complies with the

9  PSLRA," *id.*, Lead Plaintiff should be granted this leave to amend.

10     **A.  Newly Obtained Information Supports Plaintiffs' Request for Leave
           to Amend**

11

12     Without the extension, Lead Plaintiff could be severely prejudiced (should the Third

13  Amended Complaint be dismissed without leave) because significant and material new facts will be

14  omitted from the Complaint that would otherwise be included if there is time to adequately review

15  the recent documents produced to plaintiffs' Lead Counsel.  Based on the documents reviewed to

16  date, Lead Counsel believe these documents will be important in establishing Lead Plaintiff's claims,

17  particularly regarding the falsity and materiality of defendants' public statements concerning

18  Remec's financial condition, as well as defendants' knowledge that such statements were false or

19  misleading at the time they were made (*i.e.*, scienter).

20     The information recently disclosed to plaintiffs' Lead Counsel establishes that defendant

21  Winston Hickman was aware that the majority of Remec's Wireless Division product lines had no

22  realistic chance of achieving profitability throughout each quarter of the Class Period.   This

23  information includes documents such as a July 2004 (Class Period) e-mail with an attached

24  spreadsheet from Witness 15 to Remec employee Farid Firouzbakht entitled "FY 05 Full Y[ea]r

25  F[ore]c[a]st" which reveals that Hickman was receiving monthly reports, including detailed

26  forecasts, regarding the poor gross profit margins for most of Remec's product lines through the end

27  of the Class Period.  These reports include a 148-page internal document, "Wireless Financial

28

LEAD PLAINTIFF'S *EX PARTE* APPLICATION
FOR LEAVE TO AMEND COMPLAINT
[UNOPPOSED AS TO RELIEF SOUGHT]
DOCS\354464v1

- 3 -

CASE NO. 04 CV 1948 JM (AJB)

**Exhibit 1
00004**

1    Reporting 30-day Follow-Up," dated June 2004, which describes in detail the abysmal gross profit

2    margins and glaring quality control problems Remec experienced on most of its product lines

3    throughout the Class Period: ("Net Ops ... revenue of $14 M[illion] or less with $7.5 M[illion]

4    loss;" "Margin Problem - PkLAM:" *negative (-15)%* in Q1 05 and forecasted *negative (-14)%* in 2Q

5    05 (sales of $45,000 and $3.4 million) ("Design Error ... recommend increasing [LCM Reserve] to

6    $1.065K"), "Margin Problem - QBS:" *negative (-6.0)%* both in actual gross profit margin for 1Q 05

7    and forecasted for 2Q 05 ($2.15 million and $2.78 million) ("Increased Test Validation requirements

8    [from] Siemens... Design & Quality problems ... Components added to correct ... False Alarms ...

9    [Nortel] will require ASP [price] reduction to compensate"); "Margin Problem - ... ZTE:" *negative (-*

10    *8.0)%* in 1Q 05 and forecasted *negative (-1.0)%* in 2Q 05 ($747,000 and $1.167 million) ("Impaired

11    CREE device ... Customer short lead times require high velocity supply chain"), and an all-time

12    "Low Gross Margin - FDUAMCO:" *negative (-100.0)%* in 1Q 05 and forecasted *negative (-74.4)%*

13    in 2Q 05 ($1.7 million and $7.34 million) ("Design Challenges ... poor GM ... continues to be

14    significant [r]isk ... accelerate approval testing with Siemens ... 12% ASP Reduction.")). The

15    amounts from this limited sample alone add up to tens of millions of dollars and were clearly

16    material to Remec's overall financial condition. This information supports Lead Plaintiff's claims

17    that Hickman was receiving regular updates about these terrible gross profit margins but was

18    contemporaneously claiming (falsely) to the public that Remec's goodwill was not impaired, or even

19    that an interim goodwill impairment test was required. Indeed, Hickman contemporaneously

20    continued disclosing gross profit margin assumptions, which these reports reveal were completely

21    unrealistic and false. The recently disclosed documents show at the very least recklessness in

22    ignoring this contemporaneous information provided internally throughout each quarter of the Class

23    Period.

24        Similarly, information recently obtained by plaintiffs' Lead Counsel establishes that normal

25    due diligence of Spectrian would have disclosed Spectrian's dire financial prospects at the time

26    Remec purchased the company in December 2002. This includes an internal report from October

27    2002 ("Impact of Upside on E&O") presented by Spectrian's Board of Directors to Spectrian's then-

28

LEAD PLAINTIFF'S *EX PARTE* APPLICATION     - 4 -     CASE NO. 04 CV 1948 JM (AJB)
FOR LEAVE TO AMEND COMPLAINT
[UNOPPOSED AS TO RELIEF SOUGHT]
DOCS\354464v1             **Exhibit 1**
                **00005**

1  CEO Tom Waechter (who later replaced Ragland as Remec's CEO), which shows that
2  approximately two months before the acquisition, Spectrian carried $69 million in inventory, of
3  which a full *60.1% ($41.7 million) was reserved as excess and obsolete*. The excess and obsolete
4  raw materials alone totaled $30.6 million, according to the report. Thus, this report and many others
5  like it establish that Spectrian personnel, including Waechter, knew that most of the company's
6  inventory had no financial value and would ultimately have to be written off as excess and obsolete.
7  More importantly, at least one of the defendants would have reviewed these reports as part of the due
8  diligence on Spectrian, which numerous confidential witnesses confirm Ragland conducted. As a
9  result, he would or should have been aware that Remec had no realistic hope of selling inventory
10 which Spectrian had already written off as worthless. These documents support Lead Plaintiff's
11 claim that Ragland knew his statements regarding Remec's goodwill value during the Class Period
12 were false because he knew (or was reckless in not knowing) that the $10.5 million in Spectrian
13 inventory that Remec actually recorded at the time of the acquisition was already excess and
14 obsolete. In other words, this new information shows that Ragland knew all along that Spectrian's
15 inventory was impaired yet publicly claimed that no interim goodwill impairment tests were required
16 until he wrote off the *entire acquisition* as part of the $62.4 million goodwill charge at the end of the
17 Class Period.

18      Another recently obtained document (a 333-page report entitled "E&O Detail by BU 07-08-
19 04") shows that the $10.5 million in Spectrian inventory would have amounted to almost one-third
20 of the approximately *$30 million* in excess and obsolete inventory Remec carried at the end of the
21 Class Period. (The document also identifies the specific excess and obsolete products, number of
22 units, and price per unit for the entire Wireless Division.) This figure itself represents almost 50% of
23 the $62.4 million in goodwill which defendants wrote off at the end of the Class Period.

24      Finally, the newly obtained information supports Lead Plaintiff's claim that defendants knew
25 their gross profit margin assumptions used to evaluate Remec's goodwill were unrealistic and false.
26 For example, a Class Period e-mail from July 2004 from Witness 15 to Farid Firouzbahkt entitled
27 "Base Stations Systems" reveals that Hickman personally adjusted Remec's 2Q 05 (the last quarter
28

LEAD PLAINTIFF'S *EX PARTE* APPLICATION          - 5 -          CASE NO. 04 CV 1948 JM (AJB)
FOR LEAVE TO AMEND COMPLAINT
[UNOPPOSED AS TO RELIEF SOUGHT]
DOCS\354464v1                                    **Exhibit 1**
                                                **00006**

1  of the Class Period) *internal* gross profit margin forecast, which was only 9.7% -- far short of the

2  24%-29% gross profit margin initially forecasted *to the public*.  Additional internal e-mails and

3  spreadsheets show that a second forecast was completed several weeks later.  This updated forecast,

4  which documents reveal was discussed at a meeting directed by Hickman on July 21, 2004, reveals

5  that he lowered the internal gross profit margin forecast for Remec's Wireless Division to *8.7%* for

6  the same quarter (2Q 05).   Nevertheless, defendants waited approximately eight weeks until

7  September 9, 2004 to reveal that there were "indicators of [goodwill] impairment," and that they

8  were lowering their original gross profit margin assumptions of 24%-29% to 14%-24%.  Thus, the

9  new documents show that even this lowered gross profit margin was knowingly false.  Accordingly,

10  the new information supports Lead Plaintiff's claims regarding defendants' false statements and

11  materially misleading omissions, and scienter.

12  **B.    The Law Support Plaintiffs' Request for Leave to Amend**

13  Rule 15(a) of the Federal Rules of Civil Procedure mandates that leave to amend "shall be

14  freely given when justice so requires," and the Supreme Court has held that "this mandate is to be

15  heeded." *Forman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed 222 (1962).  The Ninth Circuit

16  adheres to the principles set forth in Rule 15(a) and *Forman* holding that "Rule 15's policy of

17  favoring amendments to pleadings should be applied with 'extreme liberality.'" *DCD Programs,*

18  *Ltd. v. Leighton*, 833 F. 2d 183, 186 (9th Cir. 1987) (citations omitted); *see also Forsyth v. Humana,*

19  *Inc.*, 114 F.3d 1467, 1482 (9th Cir. 1997) (reversing, in part, the court's denial of leave to amend).

20  The Ninth Circuit has "repeatedly held that 'a district court should grant leave to amend even

21  if no request to amend the pleading was made, unless it determines that the pleading could not

22  possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir.

23  2000) (citation omitted).  In determining whether to grant a motion to amend, the Court should

24  consider four factors: (1) undue delay; (2) bad faith; (3) futility of amendment; and (4) prejudice to

25  the opposing party.  *Forsyth*, 114 F.3d at 1482.  Here, all four of these factors weigh in favor of

26  granting Lead Plaintiff leave to amend.  First, as previously stated, plaintiffs' Lead Counsel received

27  the bulk of the 60,000 new pages of documents immediately prior to filing the Third Amended

28

LEAD PLAINTIFF'S *EX PARTE* APPLICATION              - 6 -                 CASE NO. 04 CV 1948 JM (AJB)
FOR LEAVE TO AMEND COMPLAINT
[UNOPPOSED AS TO RELIEF SOUGHT]
DOCS\354464v1

**Exhibit 1**
**00007**

1  Complaint. In order to meet the stipulated and ordered filing deadline, plaintiffs' Lead Counsel was

2  unable to review the new information to make any representations about its value to an amendment

3  until after the March 23 due date. *See* Rogers Decl., ¶4. Plaintiffs' Lead Counsel completed their

4  initial review of the documents, and determined that they are relevant and significant to Lead

5  Plaintiff's claims. *Id.* ¶5. Second, plaintiffs' Lead Counsel conducted their initial review as soon as

6  possible after receiving the documents, and promptly notified defendants of the intent to seek leave

7  to amend, and therefore have filed this *ex parte* application in good faith and in a timely manner.

8  Third, the detail and corroboration provided by these documents will enhance the next Amended

9  Complaint, and it is more efficient for the Court and the parties to focus efforts on a significantly

10  enhanced Complaint. Fourth, defendants will not suffer prejudice by the Court granting Lead

11  Plaintiff leave to amend because defendants' counsel has not yet filed their anticipated Motion to

12  Dismiss and will have an opportunity to respond to all of the new allegations at one time -- which is

13  ultimately more efficient. Finally, the Court's denial of this motion would not only contravene the

14  interests of efficiency and judicial economy, but would substantially prejudice Lead Plaintiff (unless

15  leave to amend is later permitted) by denying him use of critical information which supports his

16  claims, particularly with respect to scienter. The new information strengthens Lead Plaintiff's

17  scienter allegations under *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970 (9th Cir. 1999), and

18  responds to this Court's prior orders. The new amendment will be better able to demonstrate "that

19  the goodwill impairment statements, when read in light of all the information then available to the

20  market, conveyed a material false or misleading impression." Order, at 9.

21          The Ninth Circuit has stated that "[r]elevant to evaluating the delay issue [under Rule 15(a)]

22  is whether the moving party knew or should have known the facts and theories raised by the

23  amendment in the original pleading." *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1388 (9th Cir.

24  1990). Lead Plaintiff, here, did not have access to the above-referenced information because it only

25  surfaced either immediately prior to or after the prior Complaint was filed. Because there was

26  insufficient time to process, analyze, and incorporate the documents received two days before the

27  deadline, Lead Counsel endeavored to honor the Court's deadline, and then determine if further

28

---

LEAD PLAINTIFF'S *EX PARTE* APPLICATION          - 7 -          CASE NO. 04 CV 1948 JM (AJB)
FOR LEAVE TO AMEND COMPLAINT
[UNOPPOSED AS TO RELIEF SOUGHT]
DOCS\354464v1                                              **Exhibit 1**
                                                          **00008**

1  amendment was necessary.  Therefore, there is no question that Lead Plaintiff is requesting leave to

2  amend in good faith, promptly after discovering the new information and conducting further

3  investigation.

4    In addition, because of the liberal policy favoring granting leave to amend, the opposing

5  party bears the burden of demonstrating why leave to amend should not be granted. *DCD Programs*,

6  833 F.2d at 186-87.  Defendants cannot carry their burden of showing prejudice, among other

7  reasons, because this information was clearly known to defendants long before it was known to Lead

8  Plaintiff. *See LaSalvia v. United Dairymen*, 804 F.2d 1113, 1119 (9th Cir. 1986) (no prejudice to

9  defendants in allowing amendment where most of the information to support the added claim was

10  available in defendants' own files). *See also DCD Programs*, 833 F.2d at 187-88 (no basis for any

11  claim of prejudice relating to filing of proposed fourth amended complaint where case was still at

12  discovery stage with no trial date pending).  Here, discovery has not even commenced.

13    In sum, the only prejudice defendants may suffer is that the Court will have a more detailed

14  complaint for review, which is not recognizable prejudice.  Not allowing Lead Plaintiff the

15  opportunity to amend his Third Amended Complaint, however, will unfairly prejudice plaintiff and

16  the Class members.

17  **III. CONCLUSION**

18    Lead Plaintiff respectfully requests that the Court grant his *ex parte* application for leave to

19  amend, and grant Lead Plaintiff until May 4, 2006 to file the amended pleading.

20  DATED:  April 13, 2006     MILBERG WEISS BERSHAD
               & SCHULMAN LLP

21                 JEFF S. WESTERMAN
               KAREN T. ROGERS

22                 RAMON GONZALEZ

23

24      *Ramon M. Gonz* for Karen T. Rogers

25              KAREN T. ROGERS

26              355 S. Grand Avenue, Suite 4170
            Los Angeles, CA  90071

27              Telephone:  (213) 617-1200
            Facsimile:  (213) 617-1975

28

LEAD PLAINTIFF'S *EX PARTE* APPLICATION   - 8 -   CASE NO. 04 CV 1948 JM (AJB)
FOR LEAVE TO AMEND COMPLAINT
[UNOPPOSED AS TO RELIEF SOUGHT]     **Exhibit 1**
DOCS\354464v1              **00009**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MILBERG WEISS BERSHAD
   & SCHULMAN LLP
STEVEN G. SCHULMAN
PETER SEIDMAN
One Pennsylvania Plaza
New York, NY 10119
Telephone: (212) 594-5300
Facsimile: (212) 868-1229

Lead Counsel for Plaintiff


LAW OFFICE OF BRUCE G. MURPHY
Bruce G. Murphy
265 Llwyd's Lane
Vero Beach, FL 32963

Counsel for Plaintiff

LEAD PLAINTIFF'S *EX PARTE* APPLICATION
FOR LEAVE TO AMEND COMPLAINT
[UNOPPOSED AS TO RELIEF SOUGHT]
DOCS\354464v1

- 9 -

CASE NO. 04 CV 1948 JM (AJB)

Exhibit 1
00010

1           <u>DECLARATION OF SERVICE BY MAIL</u>

2         I, the undersigned, declare:

3         1.    That declarant is and was, at all times herein mentioned, a citizen of the United States

4 and a resident of the County of Los Angeles, over the age of 18 years, and not a party to or interest

5 in the within action; that declarant's business address is 355 South Grand Avenue, Suite 4170, Los

6 Angeles, California 90071.

7         2.    That on April 13, 2006, declarant served the LEAD PLAINTIFF'S *EX PARTE*

8 APPLICATION FOR LEAVE TO AMEND COMPLAINT by depositing a true copy thereof in a

9 United States mailbox at Los Angeles, California in a sealed envelope with postage thereon fully

10 prepaid and addressed to the parties listed on the attached Service List.

11         3.    That there is a regular communication by mail between the place of mailing and the

12 places so addressed.

13         I declare under penalty of perjury that the foregoing is true and correct. Executed this 13th

14 day of April, 2006, at Los Angeles, California.

15

16                                ANN MARIE GENOVESE

17

18

19

20

21

22

23

24

25

26

27

28

LEAD PLAINTIFF'S *EX PARTE* APPLICATION       - 10 -       CASE NO. 04 CV 1948 JM (AJB)
FOR LEAVE TO AMEND COMPLAINT
[UNOPPOSED AS TO RELIEF SOUGHT]
DOCS\354464v1                       **Exhibit 1**
                             **00011**

1

**REMEC**
<u>Service List</u>

2

**Counsel for Plaintiffs**

3

4   Jeff S. Westerman
    Karen T. Rogers
    Ramon M. Gonzalez
5   MILBERG WEISS BERSHAD
       & SCHULMAN LLP
6   355 S. Grand Avenue, Suite 4170
    Los Angeles, CA  90071
7   Telephone:  (213) 617-1200
    Facsimile:   (213) 617-1975

8

9   Steven G. Schulman
    MILBERG WEISS BERSHAD
       & SCHULMAN LLP
10  One Pennsylvania Avenue
    New York, NY  10119-0165
11  Telephone:  (212) 594-5300
    Facsimile:   (212) 868-1229

12

13  Blake M. Harper
    HULETT HARPER STEWART LLP
    550 West C Street, Suite 1600
14  San Diego, CA  92101
    Telephone:  (619) 338-1133
15  Facsimile:   (619) 338-1139

16  Travis E. Downs III
    LERACH COUGHLIN STOIA
17     GELLER RUDMAN & ROBBINS
    655 W. Broadway, Suite 1900
18  San Diego, CA  92101
    Telephone:  (619) 231-1058
19  Facsimile:   (619) 231-7423

20  **Counsel for Defendants**

21  Robert W. Brownlie *
    Paul A. Reynolds
22  Noah A. Katsell
    DLA PIPER RUDNICK GRAY
23     CARY US LLP
    401 B Street, Suite 1700
24  San Diego, CA  92101
    Telephone:  (619) 699-2700
25  Facsimile:   (619) 699-2701

26  **\* Denotes Service via Hand Delivery**

27

28

Bruce G. Murphy
LAW OFFICE OF BRUCE G. MURPHY
265 Llwyd's Lane
Vero Beach, FL  32963
Telephone:  (772) 231-4202
Facsimile:   (772) 231-4042

---

LEAD PLAINTIFF'S *EX PARTE* APPLICATION
FOR LEAVE TO AMEND COMPLAINT
[UNOPPOSED AS TO RELIEF SOUGHT]
DOCS\354464v1

- 11 -

CASE NO. 04 CV 1948 JM (AJB)

**Exhibit 1**
**00012**

1   MILBERG WEISS BERSHAD
      & SCHULMAN LLP
2   JEFF S. WESTERMAN (SBN 94559)
    KAREN T. ROGERS (SBN 185465)
3   RAMON M. GONZALEZ (SBN 220891)
    355 South Grand Avenue, Suite 4170
4   Los Angeles, CA 90071
    Telephone: (213) 617-1200
5   Facsimile: (213) 617-1975

6   Lead Counsel for Plaintiff

7

8

9

10                      UNITED STATES DISTRICT COURT

11                   SOUTHERN DISTRICT OF CALIFORNIA

12                                                    **BY FAX**

13  IN RE: REMEC INCORPORATED          )   CASE NO. 04 CV 1948 JM (AJB)
    SECURITIES LITIGATION              )
14                                     )   CLASS ACTION
                                       )
15  ─────────────────────────────     )   DECLARATION OF KAREN T. ROGERS
                                       )   IN SUPPORT OF LEAD PLAINTIFF'S *EX*
16  This Document Relates to:          )   *PARTE* APPLICATION FOR LEAVE TO
                                       )   AMEND COMPLAINT
17  ALL ACTIONS                        )
                                       )
18                                     )
                                       )
19

20

21

22

23

24

25

26

27

28

                 DECLARATION OF KAREN T. ROGERS IN SUPPORT OF LEAD PLAINTIFF'S
                   *EX PARTE* APPLICATION FOR LEAVE TO AMEND COMPLAINT

DOCS\354475v1

FILED

2006 APR 13  PM 4: 06

CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY _____ DEPUTY

Exhibit 1
00013

1          I, KAREN T. ROGERS, declare as follows:

2          1.      I am an attorney duly licensed to practice before this Court.  I am a member of the

3    law firm of Milberg Weiss Bershad & Schulman LLP, counsel for Lead Plaintiff.  I make this

4    declaration in support of Lead Plaintiff's *Ex Parte* Application for Leave to Amend Complaint.  I

5    have personal knowledge of the matters set forth in this declaration, and, if called as a witness, I

6    could and would testify competently thereto.

7          2.      On March 8, 2006, pursuant to the parties' stipulation, the Court granted Lead

8    Plaintiff an extension of time until March 23, 2006 to file his Third Amended Complaint.  The

9    extension was necessary due to personnel changes and the work conflicts of attorneys responsible for

10   drafting the Third Amended Complaint.

11         3.      Since the Court issued its Order Granting Motion to Dismiss [and] Leave to Amend

12   (the "Order") on February 15, 2006, we have diligently continued our investigation efforts to obtain

13   and provide further detail and corroboration for the allegations in the Complaint.  As a result of such

14   diligence and perseverance, however, witnesses recently provided us with approximately 60,000

15   pages of documents.  Because it is taking time to thoroughly review and analyze these documents,

16   and assistance from forensic accountants and other consultants is required to review and interpret

17   them, and additional time is needed to incorporate facts from these documents into the Third

18   Amended Complaint, three weeks' leave to amend is believed to be both reasonable and essential.

19         4.      We received approximately 50,000 pages of internal Company documents which

20   were not available to plaintiffs' counsel until March 21, 2006, only two days before Lead Plaintiff's

21   Third Amended Complaint was to be filed.  In order to meet the stipulated filing deadline, Lead

22   Counsel was unable to review the new documents until after March 23.  In addition, approximately

23   10,000 more documents were made available to Lead Counsel between April 3 and 7, 2006, after the

24   Third Amended Complaint was filed, which Lead Counsel believe further support Lead Plaintiff's

25   claims.  We conducted our initial review as soon as possible after receiving the documents.  We just

26   completed our initial review of the documents, and determined that the 60,000 documents are

27

28

---

DECLARATION OF KAREN T. ROGERS IN                    - 1 -                    CASE NO. 04 CV 1948 JM (AJB)
SUPPORT OF LEAD PLAINTIFF'S *EX PARTE*
APPLICATION FOR LEAVE TO AMEND
COMPLAINT                                                    **Exhibit 1**
DOCSSMALL                                                    00014

1  relevant and significant to Lead Plaintiff's claims for the reasons stated herein and in plaintiffs' *Ex*

2  *Parte* Application filed herewith.

3      5.    Without the extension, Lead Plaintiff could be severely prejudiced (should the Third

4  Amended Complaint be dismissed without leave) because significant and material new facts will be

5  omitted from the Third Amended Complaint that would otherwise be included if plaintiffs are given

6  sufficient time to adequately review and incorporate the recently produced documents. Based on an

7  initial review of these documents, we believe they are relevant and significant to Lead Plaintiff's

8  claims, particularly regarding the falsity and materiality of defendants' public statements and

9  omissions regarding Remec's financial condition, and defendants' knowledge that such statements

10  (and omissions) were false or misleading at the time they were made (*i.e.*, defendants' scienter).

11      6.    On April 12, 2006, I contacted defendants' counsel, Paul Reynolds of DLA Piper

12  Rudnick Gray Cary US LLP, by telephone and advised him that in light of the new documents

13  obtained, plaintiffs intended to seek a three-week extension for the filing of the Third Amended

14  Complaint and asked whether defendants opposed the request.  He stated that defendants do not

15  oppose the application.  I also advised him that Lead Plaintiff would make this *ex parte* application

16  on April 13, 2006.

17      7.    This *ex parte* application is timely and necessary because there is not enough time to

18  file a regularly scheduled motion on this issue given that defendants' response is due in eight days,

19  on April 21, 2006 pursuant to the stipulation and order entered March 16, 2006.

20      I declare under penalty of perjury under the laws of the United States of America that the

21  foregoing is true and correct.  Executed this 13th day of April, 2006 in Los Angeles, California.

22

23                                          *Karen T. Rogers*

24                                          KAREN T. ROGERS

25

26

27

28

DECLARATION OF KAREN T. ROGERS IN                    - 2 -                    CASE NO. 04 CV 1948 JM (AJB)
SUPPORT OF LEAD PLAINTIFF'S *EX PARTE*
APPLICATION FOR LEAVE TO AMEND                       **Exhibit 1**
COMPLAINT                                            **00015**

## DECLARATION OF SERVICE BY MAIL

I, the undersigned, declare:

1.      That declarant is and was, at all times herein mentioned, a citizen of the United States and a resident of the County of Los Angeles, over the age of 18 years, and not a party to or interest in the within action; that declarant's business address is 355 South Grand Avenue, Suite 4170, Los Angeles, California 90071.

2.      That on April 13, 2006, declarant served the DECLARATION OF KAREN T. ROGERS IN SUPPORT OF LEAD PLAINTIFF'S *EX PARTE* APPLICATION FOR LEAVE TO AMEND COMPLAINT by depositing a true copy thereof in a United States mailbox at Los Angeles, California in a sealed envelope with postage thereon fully prepaid and addressed to the parties listed on the attached Service List.

3.      That there is a regular communication by mail between the place of mailing and the places so addressed.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 13th day of April, 2006, at Los Angeles, California.

_____
ANN MARIE GENOVESE

DECLARATION OF KAREN T. ROGERS IN
SUPPORT OF LEAD PLAINTIFF'S *EX PARTE*
APPLICATION FOR LEAVE TO AMEND
COMPLAINT

- 3 -                    CASE NO. 04 CV 1948 JM (AJB)

Exhibit 1
00016

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**REMEC**
**Service List**

**Counsel for Plaintiffs**

Jeff S. Westerman
Karen T. Rogers
Ramon M. Gonzalez
MILBERG WEISS BERSHAD
   & SCHULMAN LLP
355 S. Grand Avenue, Suite 4170
Los Angeles, CA  90071
Telephone:  (213) 617-1200
Facsimile:  (213) 617-1975

Steven G. Schulman
MILBERG WEISS BERSHAD
   & SCHULMAN LLP
One Pennsylvania Avenue
New York, NY  10119-0165
Telephone:  (212) 594-5300
Facsimile:  (212) 868-1229

Blake M. Harper
HULETT HARPER STEWART LLP
550 West C Street, Suite 1600
San Diego, CA  92101
Telephone:  (619) 338-1133
Facsimile:  (619) 338-1139

Travis E. Downs III
LERACH COUGHLIN STOIA
   GELLER RUDMAN & ROBBINS
655 W. Broadway, Suite 1900
San Diego, CA  92101
Telephone:  (619) 231-1058
Facsimile:  (619) 231-7423

**Counsel for Defendants**

Robert W. Brownlie *
Paul A. Reynolds
Noah A. Katsell
DLA PIPER RUDNICK GRAY
   CARY US LLP
401 B Street, Suite 1700
San Diego, CA  92101
Telephone:  (619) 699-2700
Facsimile:  (619) 699-2701

**\* Denotes Service via Hand Delivery**

Bruce G. Murphy
LAW OFFICE OF BRUCE G. MURPHY
265 Llwyd's Lane
Vero Beach, FL  32963
Telephone:  (772) 231-4202
Facsimile:  (772) 231-4042

DECLARATION OF KAREN T. ROGERS IN
SUPPORT OF LEAD PLAINTIFF'S *EX PARTE*
APPLICATION FOR LEAVE TO AMEND
COMPLAINT

- 4 -

CASE NO. 04 CV 1948 JM (AJB)

**Exhibit 1**
**00017**

RECEIVED

APR 1 3 2006

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                                    DEPUTY

COPY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

BY FAX

| | | |
|---|---|---|
| IN RE:  REMEC INCORPORATED SECURITIES LITIGATION | ) ) ) | CASE NO. 04 CV 1948 JM (AJB) |
| | ) | <u>CLASS ACTION</u> |
| This Document Relates to: | ) ) | [PROPOSED] ORDER GRANTING LEAD PLAINTIFF'S *EX PARTE* APPLICATION FOR LEAVE TO AMEND COMPLAINT |
| ALL ACTIONS | ) ) ) ) | |

[PROPOSED] ORDER GRANTING LEAD PLAINTIFF'S *EX PARTE* APPLICATION FOR
LEAVE TO AMEND COMPLAINT

DOCS\354476v1

Exhibit 1
00018

1    Having considered Lead Plaintiff's *Ex Parte* Application for Leave to Amend Complaint, and

2    finding good cause therefore,

3    IT IS HEREBY ORDERED that:

4    (1) Lead Plaintiff is granted leave to amend the Third Amended Complaint, the amended

5    pleading to be filed no later than May 4, 2006;

6    (2)    Defendants need not respond to the Third Amended Complaint filed March 23, 2006;

7    and

8    (3)    The parties will promptly submit a Stipulation and [Proposed] Order with a new

9    schedule for Defendants' response and the parties' briefing on Defendants' Motion to Dismiss, if

10   any, which is consistent with the timing previously approved for the briefing on defendants' motion

11   to dismiss the Third Amended Complaint pursuant to the Stipulation and Order entered March 16,

12   2006.

13

14   IT IS SO ORDERED.

15   Dated: April ___, 2006

16

17                                        THE HONORABLE  JEFFREY T. MILLER
                                          UNITED STATES DISTRICT COURT JUDGE

18

19

20

21

22

23

24

25

26

27

28

[PROPOSED] ORDER GRANTING LEAD          - 1 -          CASE NO. 04cv1948 JM(AJB)
PLAINTIFF'S *EX PARTE* APPLICATION FOR
LEAVE TO AMEND COMPLAINT
DOCS\354476v1                                          **Exhibit 1**
                                                       **00019**

## DECLARATION OF SERVICE BY MAIL

I, the undersigned, declare:

1.      That declarant is and was, at all times herein mentioned, a citizen of the United States and a resident of the County of Los Angeles, over the age of 18 years, and not a party to or interest in the within action; that declarant's business address is 355 South Grand Avenue, Suite 4170, Los Angeles, California 90071.

2.      That on April 13, 2006, declarant served the [PROPOSED] ORDER GRANTING LEAD PLAINTIFF'S *EX PARTE* APPLICATION FOR LEAVE TO AMEND COMPLAINT by depositing a true copy thereof in a United States mailbox at Los Angeles, California in a sealed envelope with postage thereon fully prepaid and addressed to the parties listed on the attached Service List.

3.      That there is a regular communication by mail between the place of mailing and the places so addressed.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 13th day of April, 2006, at Los Angeles, California.

_____
ANN MARIE GENOVESE

[PROPOSED] ORDER GRANTING LEAD
PLAINTIFF'S *EX PARTE* APPLICATION FOR
LEAVE TO AMEND COMPLAINT
DOCS\354476v1

- 2 -

CASE NO. 04cv1948 JM(AJB)

**Exhibit 1**
**00020**

1
REMEC
Service List

2
**Counsel for Plaintiffs**

3
Jeff S. Westerman                                      Bruce G. Murphy
4   Karen T. Rogers                                    LAW OFFICE OF BRUCE G. MURPHY
Ramon M. Gonzalez                                      265 Llwyd's Lane
5   MILBERG WEISS BERSHAD                              Vero Beach, FL 32963
&amp; SCHULMAN LLP                                    Telephone: (772) 231-4202
6   355 S. Grand Avenue, Suite 4170                    Facsimile:  (772) 231-4042
Los Angeles, CA 90071
7   Telephone: (213) 617-1200
Facsimile:  (213) 617-1975
8
Steven G. Schulman
9   MILBERG WEISS BERSHAD
&amp; SCHULMAN LLP
10  One Pennsylvania Avenue
New York, NY 10119-0165
11  Telephone: (212) 594-5300
Facsimile:  (212) 868-1229
12
Blake M. Harper
13  HULETT HARPER STEWART LLP
550 West C Street, Suite 1600
14  San Diego, CA 92101
Telephone: (619) 338-1133
15  Facsimile:  (619) 338-1139

16  Travis E. Downs III
LERACH COUGHLIN STOIA
17    GELLER RUDMAN &amp; ROBBINS
655 W. Broadway, Suite 1900
18  San Diego, CA 92101
Telephone: (619) 231-1058
19  Facsimile:  (619) 231-7423

20  **Counsel for Defendants**

21  Robert W. Brownlie *
Paul A. Reynolds
22  Noah A. Katsell
DLA PIPER RUDNICK GRAY
23    CARY US LLP
401 B Street, Suite 1700
24  San Diego, CA 92101
Telephone: (619) 699-2700
25  Facsimile:  (619) 699-2701

26  **\* Denotes Service via Hand Delivery**

27

28
[PROPOSED] ORDER GRANTING LEAD          - 3 -                    CASE NO. 04cv1948 JM(AJB)
PLAINTIFF'S *EX PARTE* APPLICATION FOR
LEAVE TO AMEND COMPLAINT
DOCS\354476v1                                          **Exhibit 1**
                                                       **00021**

**Exhibit 2**

**EXHIBIT 2**

| REMEC, INC. PROPRIETARY INFORMATION AND INVENTION ASSIGNMENT AGREEMENT[1] | JDS UNIPHASE AGREEMENTS[2] |
|---|---|
| **PROPRIETARY INFORMATION:** The term "Proprietary Information" shall mean trade secrets, confidential knowledge, data or any other proprietary information of the Company and each of its subsidiaries or affiliated companies. Proprietary information includes <br>• (a) inventions, trade secrets, ideas, processes, formulas, data, programs, other works of authorship, know-how improvements, discoveries, developments, designs and techniques related to the business or proposed products of the Company and which were learned or discovered by me during the term of my employment with the Company and <br>• (b) information regarding plans for research, development, new products and services, marketing and selling, business plans, budgets and unpublished financial statements… which were learned or discovered by me during the term of my employment with the Company; and information regarding the skills and compensation of other employees of the Company. | **PROPRIETARY INFORMATION:** All information and any idea in whatever form, tangible or intangible, whether disclosed to or learned or developed by me, pertaining in any manner to the business of the Company or to the Company's affiliates, consultants, or business associates, unless (i) the information is or becomes publicly known through lawful means; (ii) the information was rightfully in my possession or part of my general knowledge prior to my employment by the Company; or (iii) the information is disclosed to me without confidential or proprietary restrictions by a third party… the Company considers the following information to be included, without limitation, in the definition of Proprietary Information: <br>• (a) notebooks, schematics, techniques, employee suggestions, development tools and processes, computer printouts, computer programs, design drawings and manuals, and improvements; <br>• (b) information about costs, profits, markets, and sales; <br>• (c) plans for future development and new product concepts; <br>• (d) all documents, books, papers, drawings, models, sketches, and other data of any kind and description, including electronic data recorded or retrieved by any means, that have been or will be given to me by the Company (or any affiliate of it), as well as written or verbal instructions or comments. |
| **NONDISCLOSURE/ CONFIDENTIAL RESTRICTIONS:** During the term of my employment and thereafter, I will hold in strictest confidence and will not disclose, use or publish any of the Company's Proprietary Information, except as may be required in connection with my work for the Company, or unless expressly authorized by the Company. I hereby assign to the Company any rights I may have or acquire in such Proprietary Information and recognize that all Proprietary Information shall be the | **NONDISCLOSURE/ CONFIDENTIAL RESTRICTIONS:** I agree to hold in strict confidence and in trust for the sole benefit of the Company all Proprietary Information and will not disclose any Proprietary Information, directly or indirectly, to anyone outside of the Company, or use, copy, publish, summarize, or remove from Company premises such information (or remove from the premises any other property of the Company) except <br>• (i) During my employment to the extent necessary to |

[1] Exhibit 1 to Declaration of Richard A. Sackett in Support of Defendants' Motion for Sanctions, dated January 29, 2009.
[2] *In re JDS Uniphase Corporation Securities Litigation*, 238 F.Supp.2d 1127, 1130-1132 (N.D. Cal. 2002).

**Exhibit 2**
00022

| | |
|---|---|
| sole property of the Company and that the Company shall be the sole owner of all patent rights, copyrights, trade secret rights and all other rights throughout the world in connection with such Proprietary Information. | carry out my responsibilities as an employee of the Company or<br>• (ii) After termination of my employment, as specifically authorized in writing by a duly authorized officer of the Company.<br>• I further understand that the publication of any Proprietary Information through literature or speeches must be approved in advance in writing by a duly authorized officer of the Company |
| **RETURN OF COMPANY DOCUMENTS:**<br>When I leave the employ of the Company, I will deliver to the Company all drawings, notes, memoranda, specifications, devices, formulas, and documents together with all copies thereof, and any other material containing or disclosing any Company Inventions, Third Party Information or Proprietary Information of the Company, and will sign and return to the Company the form attached as Exhibit B.<br>I further agree that any property situated on the Company's premises and owned by the Company, including disks and other storage media, filing cabinets or other work areas, is subject to inspection by Company personnel at any time with or without notice. | **RETURN OF COMPANY DOCUMENTS:**<br>You agree to return all Company property, including, without limitation, all books, manuals, records, reports, notes, contracts, lists, blueprints, and other documents, or materials, or copies thereof, and equipment furnished to or prepared by you in the course of or incident or your employment. You also acknowledge and reaffirm your continuing obligations under the Proprietary Information Agreement you signed with the Company on original date of hire. |
| **TERM:**<br>During the period of my employment, I will promptly disclose to the Company fully and in writing and will hold in trust for the sole right and benefit of the company any and all Inventions. In addition, after termination of my employment, I will disclose all patent applications filed by me within one (1) year after termination of employment. | **TERM:**<br>Employee agrees that for a period of five (5) years following either the disclosure to Employee of any of the Company's Confidential Information or the termination of Employee's employment with the Company, whichever is last to occur, Employee will not disclose said information or any portion thereof to any person, firm, corporation or other entity, or make use of such information in any way without the Company's prior written consent, or reverse engineer, decompile, or disassemble any of the Company's products without such consent. |

**Exhibit 2**
**00023**

**Exhibit 3**

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

## CIVIL MINUTE ORDER

### VAUGHN R WALKER
United States District Chief Judge

**DATE: May 17, 2006**

**COURTROOM DEPUTY:** Cora Delfin          **Court Reporter:** Connie Kuhl

**CASE NO. C-06-672 VRW**

**TITLE: Tash Hepting, et al, v AT&T Corporation, et al**

| **COUNSEL FOR PLAINTIFFS:** | **COUNSEL FOR DEFENDANTS:** |
|---|---|
| Cindy Cohn, Maria Morris | David Anderson, Bradford Berenson |

| **COUNSEL FOR UNITED STATES:** | **COUNSEL FOR MEDIA COMPANIES:** |
|---|---|
| Carl J Nichols | Karl Olson |

**PROCEEDINGS:**     Hearing on AT&T's motion to compel return of documents and parties' cross-motions regarding sealing of documents

**RESULTS:**

The court denied, without prejudice, AT&T's motion to compel return of the documents attached as Exhibits A-C to the declaration of Mark Klein (Doc #31, Exs A-C). Pending further order of court, plaintiffs, their counsel, retained expert and consultant shall secure the documents and their content and shall not disclose the documents or their content to anyone. Counsel for plaintiffs and AT&T are directed to confer and to submit a joint protective order implementing this directive.

All papers heretofore filed or lodged under seal shall remain under seal pending further order of court. Counsel for plaintiffs and AT&T are directed to confer and to submit by May 25, 2006, jointly agreed-upon redacted versions of the preliminary injunction motion (Doc #30) and the Klein declaration (Doc #31). If the parties fail to agree on this matter, they shall file by that date memoranda that specifically identify the portions, if any, of these documents that each party believes are sealable.

Plaintiffs are instructed to file by close of business on May 22, 2006, a memorandum that addresses: (1) whether this case can be litigated without deciding the state secrets issue, thereby obviating any need for the court to review the government's classified memorandum and declarations and (2) whether the state secrets privilege is implicated by plaintiffs' FRCP 30(b)(6) deposition request for information whether AT&T received any certification from the government. AT&T and the government may each file reply memoranda on these issues by

**Exhibit 3**
00024

close of business on May 24, 2006.

The court sets June 23, 2006, at 9:30 AM, for hearing on the following motions:  (1) the government's motion to intervene; (2) the government's motion to dismiss based on the state secrets privilege and (3) the AT&T entities' motions to dismiss.  The court vacates the June 21, 2006 hearing and the accompanying briefing schedule for plaintiffs' preliminary injunction motion.

The court will entertain motions to intervene only on written application therefor with appropriate notice and service on all parties; if necessary, the court will consider applications to shorten time for any such motions to intervene.

**Exhibit 3**
00025